1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   JODI SCOTT-GEORGE, individually and        No.  2:13-cv-00441-TLN-DAD
     on behalf of other members of the general
12   public similarly situated,

13                          Plaintiffs,          **ORDER GRANTING MOTION FOR**
                                                 **CLASS CERTIFICATION**
14           v.

15   PVH CORPORATION, a Delaware
     corporation, and DOES 1 through 100,
16   inclusive,

17                          Defendant.

18

19        This matter is before the Court pursuant to Plaintiffs Jodi George Scott and Melissa

20   Wiggs's (collectively referred to as "Plaintiffs") Motion for Class Certification.  (ECF No. 55.)

21   Defendant PVH Corporation ("Defendant") has filed an opposition[1] (ECF No. 68), to which

22   Plaintiffs have filed a reply (ECF No. 78).[2]  The Court has carefully considered the arguments

23   _____
     [1]        In conjunction with Defendant's opposition, Defendant filed a motion to strike the declaration of Dakkar
24   Hunter.  (ECF No. 69.)  Among other reasons, Defendant argues that Hunter was not employed during the time frame
     applicable in this lawsuit.  Plaintiffs do not dispute this fact, but assert that Hunter's account of his experience serves
25   as evidence of Defendant's routine practices.  (Opp'n to Mot. to Strike, ECF No. 82 at 3.)  The Court hereby
     GRANTS Defendant's Motion to Strike (ECF No. 69) because although Hunter's declaration may show a routine
26   practice from 2004 to 2007, it does not show that the same practice existed from March 2009 to present and is thus
     not relevant to this Court's inquiry.
27   [2]        Plaintiffs have moved to exclude Exhibits 11–24, 26, 27, 29–32 and 44 to Defendant's Compendium of
     Evidence submitted in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification.  (ECF No.
28   83.)  Plaintiffs assert that Defendant never produced exhibits 11–17, 19–20, 22–24, 26, 27, 29–32, and 44 and further
     that although exhibits 18 and 21 were produced, they were redacted to conceal employees' names, thus rendering

                                                  1

raised in the parties' briefing.  For the reasons set forth below, Plaintiffs' Motion for Class

Certification is hereby GRANTED.

## I.   FACTUAL BACKGROUND

Plaintiffs and the proposed class members are retail store nonexempt employees of

Defendant, an international clothing retailer.  At issue is the lawfulness of Defendant's company

policies on: payment of overtime/double overtime; security bag check; paycards; meal and rest

periods; and wage statements.  Plaintiffs seek to certify the following classes:

> (1) Overtime I Subclass (non-payment of regular overtime): All
> nonexempt employees who worked in excess of 8 hours (but less
> than 12 hours) in a workday or in excess of 40 hours in a workweek
> without receiving the appropriate overtime wage that is one and a
> half times the regular rate pay, while working for Defendant in
> California from March 20, 2009 to the present.
>
> (2) Overtime II Subclass (non-payment of double overtime): All
> nonexempt employees who worked in excess of 12 hours in a
> workday without receiving the appropriate overtime wage that is
> twice the regular rate pay, while working for Defendant in
> California from March 20, 2009 to the present.
>
> (3) Security Bag Check Subclass: All nonexempt employees who
> were subjected to a security bag check while working for Defendant
> in California from March 20, 2009 to the present.
>
> (4) Paycard Subclass: All nonexempt employees who received their
> earned wages via the Money Network paycard system while
> working for Defendant in California from March 20, 2009 to the

---

them useless.  (ECF No. 83 at 2–3.)  In response, Defendant asserts that PVH produced thousands of pages of class
member wage records during the course of discovery, and explained that it would produce a sampling of class
member time records. (Opp'n, ECF No. 90 at 1.)  Defendans further asserts that after the parties agreed to stay
discovery to focus on mediation, they agreed that PVH would produce a 20% sampling of time records in advance of
the mediation. These documents were produced to Plaintiffs both with redaction and without redaction prior to the
parties' first mediation in July 2014. (Opp'n, ECF No. 90 at 1.)  Defendant alleges that after the failed mediation, no
mention of the 151 Labor Code § 226(b) requests was made by Plaintiffs until February 2015—a year after Plaintiffs
were told that the records were gathered and ten days before their reply to the class certification motion was due.
(Opp'n, ECF No. 90 at 3.)  Defendant alleges that PVH's counsel explained via e-mail a few days later that the
records were available for copying and that Plaintiffs' counsel never responded.  (Opp'n, ECF No. 90 at 3; Hansell
Decl. ¶ 6.)

Based on the assertions made by both parties, the Court is not convinced that the situation warrants
exclusion of the documents.  Furthermore, to the extent that Plaintiffs assert that Defendant's 30(b)(6) witness, Ms.
Buckley's testimony was contrary to documents that were produced in opposition to Plaintiffs' motion for class
certification, the Court finds that Plaintiffs' characterization of the testimony is not completely accurate.  Her
declaration in support of PVH's Opposition to Class Certification is consistent with her deposition testimony.
Ms. Buckley merely testified that she did not know why Jodi Scott-George was not paid double overtime. She was
not asked questions about the wages of any other putative class members.  As such, the Court hereby DENIES
Plaintiffs' motion to exclude Exhibits 11–24, 26, 27, 29–32 and 44 to Defendant's Compendium of Evidence
submitted in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification (ECF No. 83).

1    present.

2        (5) Meal Period Subclass: All nonexempt employees who did not
         receive a compliant meal period, while working for Defendant in
3        California from March 20, 2009 to the present.

4        (6) Rest Period Subclass: All nonexempt employees who did not
         receive a compliant rest period, while working for Defendant in
5        California from March 20, 2009 to the present.

6        (7) Late Pay Subclass: All nonexempt employees who worked for
         Defendant in California whose employment ended between March
7        20, 2010 and the date of certification, who did not receive all wages
         due at the time they were terminated or otherwise stopped working
8        for Defendant.

9        (8) Wage Statement Subclass: All nonexempt employees who
         received non-compliant wage statements while working for
10       Defendant in California from March 20, 2009 to the present.

11

12   (Mem. of P&A in Supp't of Mot. for Class Cert., ECF No. 55-1 at 1.)  Plaintiff Jodi Scott-George

13   is the Class Representative for subclass (1), (2), (5), (6) and (7).  Plaintiff Melissa Wiggs is the

14   Class Representative for the subclass (3), (4), (6), (7) and (8).  The proposed class would

15   encompass not only all nonexempt employees of PVH Corporation (which owns Van Heusen;

16   and owned but sold G. H. Bass) but also nonexempt employees of PVH Retail, LLC (which owns

17   Calvin Klein, Izod, and Tommy Hilfiger) because the PVH Corporation as the parent company

18   imposes identical wage and hour policies for PVH Retail, LLC.  (ECF No. 55-1 at 2.)

19       **II.    LEGAL STANDARD**

20       Before certifying a class, the trial court must conduct a "rigorous analysis" to determine

21   whether the party seeking certification has met the prerequisites of Rule 23.  *Wal-Mart Stores,*

22   *Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Telephone Co. of Sw. v. Falcon*, 457

23   U.S. 147, 161 (1982)).  "While the trial court has broad discretion to certify a class, its discretion

24   must be exercised within the framework of Rule 23."  *Zinser v. Accufix Research Inst., Inc.*, 253

25   F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001) (citing *Doninger v. Pac. Nw. Bell,*

26   *Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977)); *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d

27   538, 542–43 (9th Cir. 2013).  A court may certify a class if a plaintiff demonstrates that all of the

28   prerequisites of Federal Rule of Civil Procedure 23(a) have been met and that at least one of the

3

1    requirements of Rule 23(b) have been met.  Fed. R. Civ. P. 23; *see also Wal-Mart Stores, Inc.*,

2    131 S. Ct. at 2548–49.

3         Rule 23(a) states that one or more members of a class may sue or be sued as representative

4    parties on behalf of all only if:

> (1) the class is so numerous that joinder of all members is
> impracticable [the "numerosity" requirement]; (2) there are
> questions of law or fact common to the class [the "commonality"
> requirement]; (3) the claims or defenses of representative parties are
> typical of the claims or defenses of the class [the "typicality"
> requirement]; and (4) the representative parties will fairly and
> adequately protect the interests of the class [the "adequacy of
> representation" requirement].

10   In addition, Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk

11   of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting

12   the class as a whole would be appropriate; or (3) that common questions of law or fact

13   predominate and the class action is superior to other available methods of adjudication.

14   Fed.R.Civ.P. 23(b).  The court has broad discretion to certify a class, and district courts are

15   accorded "noticeably more deference" when they grant certification versus when they deny

16   certification.  *Wolin v. Jaguar Land Rover North America*, *LLC*, 617 F.3d 1168, 1171 (9th Cir.

17   2010).

18        **III.    ANALYSIS**

19        The Court first addresses the requirements under Rule 23(a) and then moves to Rule

20   23(b).  Because Plaintiffs have requested certification of eight separate subclasses, the Court

21   discusses the four Rule 23(a) factors as they pertain to the different classes.

22        A.    Rule 23(a)

23             i.    *Numerosity*

24        To meet the numerosity requirement of Rule 23(a), a class must be "so numerous that

25   joinder of all members is impracticable."  Rule 23(a)(1); *see also Consolidated Rail Corp. v.*

26   *Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) ("numerosity is presumed at a level of 40

27   members"); *Andrews Farms v. Calcot, Ltd.*, No. CV–F–07–0464 LJO DLB, 2009 WL 1211374,

28   at *3 (E.D. Cal. May 1, 2009); *see also* William B. Rubenstein, et al., Newberg on Class Actions,

4

1    § 3.12 at 198 (5th ed. 2011).

2            Defendant asserts that: (1) Subclass I and II do not meet the numerosity requirement

3    because PVH time records from March 2009 to May 5, 2013, indicate that only 58 non-exempt

4    California employees worked in excess of 12 hours in one day (ECF No. 68 at 10); (2)

5    determining class members for Subclass III is impossible because there is no way to determine

6    which employees were subjected to bag checks (ECF No. 68 at 11); (3) Subclass IV may be

7    mooted by the *Chavez* class action settlement (ECF No. 68 at 24);[3] and (4) Plaintiffs fail to show

8    numerosity concerning Subclass V because they have not provided a methodology for

9    determining how many and which people missed meal breaks involuntarily without receiving

10   premium pay (ECF No. 68 at 21).

11           At the outset, the Court notes that although not all of the nonexempt employees will be

12   included in each class, a large percentage of those employees were all subject to the same pay

13   structure (including overtime, paycards, meal and rest periods, etc.).  As to Defendant's first

14   contention that Subclass I and II are not numerous enough to support class certification, the Court

15   finds Defendant's assertion that only 58 non-exempt California employees worked in excess of 12

16   hours in one day suspect at best.  According to the declaration of PVH's Vice President of Retail

17   and HR Administration, Carla David, PVH employed "more than 4,324 [nonexempt] individuals"

18   during the class period.  (*See* David Decl. in Supp't of Not. for Removal, ECF No. 4 at ¶ 5.)

19   Therefore, the assertion that only 58 out of 4,324 employees worked in excess of 12 hours is

20   suspect.  However, even if Defendant's number is true, 58 class members is sufficient for

21   numeroisty.  *See Consolidated Rail Corp.*, 47 F.3d at 483 ("numerosity is presumed at a level of

22   40 members").

23           Defendant next asserts that determining class members for Subclass III is impossible

---

24   [3]        Defendant has requested that this Court take judicial notice of the pending settlement in *Chavez v. PVH*
25   *Corp.*, N.D. Cal. Case No. 5:13-cv-01797-LHK (the "*Chavez* case") and *Lapan v. PVH Corp.*, N.D. Cal. Case No.
     3:13-cv-05006-LHK (the "*Lapan* case"), pursuant to Federal Rule of Civil Procedure 201.  (*See* Request for Judicial
26   Notice, ECF No. 107.)  Plaintiffs oppose Defendant's request asserting the sole basis for Defendant's request is the
     potential collateral estoppel effect of the *Chavez* and *Lapan* settlements.  (Objections, ECF No. 108.)  Rule 201(b)
27   provides that "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is
     generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from
28   sources whose accuracy cannot reasonably be questioned.  The documents at issue here are all court filings or matters
     of public record.  Therefore, judicial notice is appropriate and Defendant's request is GRANTED.

1   because there is no way to determine which employees were subjected to bag checks.  For these

2   same reasons Defendant argues that Plaintiffs fail to show numerosity concerning Subclass V

3   because they have not provided a methodology for determining how many and which people

4   missed meal breaks involuntarily without receiving premium pay (ECF No. 68 at 21).  The Court

5   suspects that a large percentage of the employees would have carried bags or purses to work in

6   order to carry their belongings, such as wallets, keys, and phone, and thus would be part of the

7   class.  Plaintiffs have correctly pointed out that membership in the security bag check and rest

8   period subclasses can be determined through schedules, time and payroll records, and procedural

9   tools such as surveys.  (*See* Pls' Reply, ECF No. 78 at 2–3.)  Moreover, Defendant's arguments

10  fail because Plaintiffs are not required to show a method for determining the number of

11  employees affected because Plaintiff's theory is based on a policy which applies to all of

12  Defendant's California employees.  *See In re AutoZone, Inc., Wage & Hour Employment*

13  *Practices Litig.*, 289 F.R.D. 526, 533 (N.D. Cal. 2012) (holding that defendant's argument that

14  the class was not ascertainable fails because plaintiff's theory of the case was based on a policy

15  that applied to all of defendant's California employees); *In re Whirlpool Corp. Front Loading*

16  *Washer Prods. Liab. Litig.*, 678 F.3d 409, 420 (6th Cir. 2012) (class not overbroad so long as

17  challenged practice is "premised on a ground that is applicable to the entire class").

18      Lastly, Defendant argues that Subclass IV may be mooted by the *Chavez* class action

19  settlement.  (ECF No. 68 at 24.)  However, Defendant's argument requires that the Northern

20  District of California Court grant final approval of the settlement.  The Court will not base its

21  determination of whether to certify a class on the probability of what will happen in another legal

22  matter outside of this district.  In the event that the *Chavez* class action settles and the settlement

23  subsumes the class at issue here, the Court would be willing to reconsider the matter at that time.

24  However, denying class certification in anticipation of another court's ruling is not appropriate.

25      Accordingly, the Court finds that the number of plaintiffs exceeds the threshold

26  contemplated by courts and would make joinder of all members impossible.  Therefore,

27  numerosity as to all eight subclasses is satisfied.

28

*ii.    Common Questions of Law and Fact*

To meet the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a).  In *Wal–Mart v. Dukes*, the Supreme Court announced that this provision requires plaintiffs to "demonstrate that the class members 'have suffered the same injury,' not merely violations of the same provision of law." 131 S. Ct. at 2551 (quoting *Gen.Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,157 (1982)).  Thus, "plaintiffs' claims 'must depend upon a common contention' such that 'determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Parsons v. Ryan*, No. 13–16396, 2014 WL 2523682, at *10 (9th Cir. June 5, 2014) (quoting *Wal–Mart*, 131 S. Ct. at 2551). Plaintiffs need not show that "every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a) (2)." *Id.* at *11 (internal quotations omitted); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (noting that "commonality only requires a single significant question of law or fact").  "Thus, '[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'" *Id.* (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Here Plaintiffs assert that numerous common factual and legal questions are present, including but not limited to the following:

- Does PVH's failure to pay overtime and double overtime violate California Labor Code § 510?

- Does PVH's company policy of requiring its employees to undergo security bag checks while off the clock violate California law?

- Does PVH's failure to provide a meaningful choice to receive earned wages in a form other than a paycard that charges fees (under some circumstances) violate California law?

- Does PVH's meal period policy which provides a "30 minute meal period after 5 consecutive hours" violate [California Industrial Welfare Commission ("IWC")] IWC Wage Order 7-2001, § 11?

- Does PVH's rest period policy which provides a "10 minute paid break every 4 hours worked" violate IWC Wage Order 7-2001, § 12?

- Does PVH's failure to include the beginning date of the pay period violate California Labor Code § 226?

(ECF No. 55-1 at 4.)  All of the above questions hinge on the interpretation (and lawfulness thereof) of PVH's company policies.

In opposition, Defendant asserts that commonality does not exist as to: (1) Subclass III because "diversity of bag check processes in each store … [due to] employees [who] do not bring bags to work" (ECF No. 68 at 11); (2) Subclass IV because Plaintiffs do not show that a common policy of charging employees fees for use of their paycards existed (ECF No. 68 at 24);  (3) Subclass V because Plaintiffs cannot show a common question concerning meal breaks (ECF No. 68 at 17); (4) Subclass VI because there is no common policy of denying rest breaks (ECF No. 22); and (5) Subclass VIII because Defendant asserts that Plaintiffs' only evidence concerning alleged non-compliant wage statements are time barred or not representative of the class (ECF No. 68 at 28).  The Court addresses each one in turn.

At the outset, the Court finds Defendant's numerous assertions that Plaintiffs have not proven that employees were not adequately compensated for overtime hours is not helpful to this Court in determining whether class certification should be granted.   *See In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 604 (N.D. Cal. 2010) ("Plaintiffs are not required to prove the merits of their case in-chief at the class certification stage.") (internal citations omitted). As to Defendant's contentions concerning Subclass III, the Court is not persuaded that the Security Bag Check Subclass is not ascertainable.  As mentioned in discussing numerosity, Plaintiffs can identify employees who underwent bag checks through surveys, sampling, and representative testimony.  Furthermore, any argument that there is no policy requiring off the clock searches is unpersuasive.  PVH's Internal Theft Prevention policy specifically states:

> All associate carry bags, packages, etc. are to be thoroughly inspected by Store Management when any PVH associate, including management personnel, enters or exits the store. **It is to be explained to all associates that it is <u>their responsibility</u> to ensure that their packages/bags are checked both upon entering**

**and prior to exiting the store**.

(*See* Mot. for Class Cert, Ex. S (all emphasis in original).)  The policy requires that the bags be searched upon entering or exiting the store.  Unless Defendant has found a way to clock employees in at the entrance of the floor, then the policy is to search bags prior to and after employees have clocked in and out.  Furthermore, Plaintiffs have submitted numerous declarations in which employees state that their bags were searched pursuant to the policy.  (*See* Avina Decl. ¶ 9; Gadsby Decl. ¶ 10; Hounsley Decl. ¶ 10; Lesley Decl., ¶ 9; Pederson Decl., ¶ 10; Merrill Decl. ¶ 10; Rodriguez Decl. ¶ 7.)

Next, Defendant asserts that Subclass IV should not be certified because Plaintiffs do not show that a common policy of charging employees fees for use of their paycards existed.  (ECF No. 68 at 24.)  In response, Plaintiffs assert they have clearly identified the common policy, automatically issuing the pay cards when an employee was hired, and that is the legality of this policy that is being challenged.  (Reply, ECF No. 78 at 12–13.)  Therefore, Plaintiffs assert that this Court's decision as to the legality of that policy "would 'produce in one stroke answers that are central to the validity of [plaintiff's] claims.'" (ECF No. 78 at 13 (quoting *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013).)

This Court agrees. The legality of  Defendant's policy—which entails automatically issuing paycards to its employees and puts the burden on the employees to request a different option—is common to all proposed Subclass IV members.  The policy is an issue "central to the validity of each one of the claims."  *See Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2551.

Defendant next argues that Plaintiffs cannot show a common question concerning meal breaks or rest breaks and thus commonality does not exist as to Subclass V (ECF No. 68 at 17) or Subclass VI (ECF No. 22).

Defendant acknowledges, that PVH has a policy that provides for a "30 minute meal period after every 5 consecutive hours" and a "10 minute paid break for every 4 hours worked." (Pls' Ex. LL.)  The meal period policy and the rest period policy were distributed to store managers via memos from Defendant's Human Resources department with instructions to review

the policy with all employees, and it was reviewed with new hires.  (Bae Decl. ¶¶ 22–23, Exs. O–P, X.)  Plaintiffs aver that both policies are facially defective: "This policy is defective on its face as a matter of law because PVH's employees will receive a meal period only after having completed 5 hours of work, instead of receiving a meal period "no later than the end of the employees' fifth hour of work."  (ECF No. 55-1 at 12.)  Similarly, Plaintiffs argue that "[t]he rest period policy, by its own terms, does not authorize or permit rest periods for employees who work between 3.5 and 4 hours or those employees who work between 6 and 8 hours because it only allows a rest period "for every 4 hours worked."  (ECF No. 55-1 at 14.)  The Court finds that this is sufficient to meet the commonality requirement.

Finally, Defendant asserts that commonality does not exist for Subclass VIII because Plaintiffs' only evidence concerning alleged non-compliant wage statements are time barred or not representative of the class.  (ECF No. 68 at 28.)  Plaintiffs assert that a common issue of law and fact exists as to Subclass VIII —whether the wage statements provided to the putative class members have complied with California Labor Code § 226(a).  (ECF No. 55-1 at 16.) Specifically, Plaintiffs argue that PVH's wage statements are not compliant because they fail to state: the total hours worked; the inclusive dates of the pay period; and all applicable hourly rates. (*See* ECF No. 55-1 at 16 (citing CAL. LAB. CODE §§ 226(a) (2), (6) & (9)).)  In Plaintiffs' reply, they clarify that the their theory of liability as to this subclass is derivative of the claims for Subclasses I, II, and III because it is the overtime infractions and off-the-clock security bag checks that create inaccuracies as to the number of hours worked.   (ECF No. 78 at 13.)  Based on this theory of liability, members of Subclasses I, II and III would likely be members of Subclass VIII, and as a result, Defendant's concerns about a lack of evidence concerning class members that are not time barred is unwarranted.

For the foregoing reasons, the Court finds that common factual and legal questions are present and should be adjudicated using common proof applicable to the entirety of Plaintiffs' proposed Subclass.  The answers to the questions of law provided by Plaintiffs present a common answer to the claims of each Subclass.  Accordingly, commonality under Rule 23(a)(2) as to all eight Subclasses is met.

1    *iii.*      *Typicality*

2         "The [Rule 23(a)(3)] test of typicality is whether other members have the same or similar

3    injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

4    whether other class members have been injured by the same course of conduct." *Hanon v.*

5    *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards,

6    representative claims are "typical" if they are reasonably co-extensive with those of absent class

7    members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

8    1020 (9th Cir. 1998). It is sufficient that the class representative is "part of the class and

9    possess[es] the same interest and suffer[s] the same injury as the class members." *General*

10   *Telephone Co. of Southwest*, 457 U.S. at 156.

11        Plaintiffs assert that they were subjected to the same company policies as the other

12   putative class members, including employees of PVH Retail, LLC. In response, Defendant

13   asserts that: (1) as it pertains to Subclass I, Scott-George, as the class representative, is not typical

14   of the other putative class members (ECF No. 68 at 10); (2) Plaintiff Wiggs's alleged bag check

15   experience (waiting 4–10 minutes to have her bag checked in a hectic store managed by

16   employees who were not always available to conduct bag checks) is not typical of other putative

17   Subclass III members (ECF No. 68 at 16); and (3) Named Plaintiffs' alleged rest break

18   experiences differ greatly from other assistant managers and thus typicality does not exist for

19   Subclass VI (ECF No. 68 at 21).

20        For the following reasons, the Court finds Defendant's arguments unavailing.

21   Defendant's assertion that Scott-George's experience was not typical of the other putative

22   Subclass I members is based on the belief that the store Scott-George worked in had unique issues

23   with its manager, who apparently had substance abuse problems and missed shifts without

24   warning. (ECF No. 68 at 10.) Although this may be true, the Court is not convinced that this

25   would mean that Scott-George's lack of overtime payment is not typical. Defendant has not

26   shown that the manager's alleged substance abuse somehow changed Defendant's pay policy or

27   hour calculations. Similarly, Defendant's arguments concerning Subclass V fail. Defendant

28   argues that Named Plaintiffs' experiences concerning rest breaks were unique to them. However,

11

1   Plaintiffs are challenging the written policy that applied to all of the nonexempt employees.

2   Therefore, Plaintiffs' facial challenge of the policy is not affected by Defendant's arguments that

3   the experiences differed.  Lastly, as to Defendant's argument that Plaintiff Wiggs's bag check

4   experience is not typical of other putative Subclass III members (ECF No. 68 at 16), the same

5   issue exists.  Defendant attempts to argue that typicality is overcome by different experiences

6   with the policy.  However, Defendant fails to acknowledge that Named Plaintiffs are typical of

7   Subclass III, since all putative members were subjected to the same policy.  The Court declines to

8   scrutinize the facts in such a detailed way as to make any small difference in class members'

9   experiences destroy the overall similarity that binds them.  To do so would make any class action

10   litigation inapplicable.  Plaintiffs' Subclasses possess the same interest and arguably suffer the

11   same injury because they were all subjected to the same policy.  *See General Telephone Co. of*

12   *Southwest*, 457 U.S. at 156.  Thus, the Court finds that Plaintiffs have met their burden of

13   showing typicality as to all eight Subclasses under Rule 23(a).

14          iv.      *Adequate Class Representation*

15          The requirement of adequate representation asks whether the representative "will fairly

16   and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4). Courts are to

17   inquire (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of

18   the class, and (2) whether the named plaintiff and counsel will prosecute the action vigorously for

19   the class.  *See Hanlon*, 150 F.3d at 1020.

20          Plaintiffs' interests in this litigation are co-extensive with the interests of the class.  They

21   have allegedly been injured in the same manner by Defendant and seek the same relief.  They

22   have devoted considerable time to this litigation, including initiating the case by searching for a

23   lawyer, consulting with counsel to aid in the investigation, responding to written discovery,

24   gathering documents responsive to discovery requests and subpoena, traveling for depositions,

25   and have asserted that they will continue to do so.  (*See* Scott-George Decl. ¶ 14; Wiggs Decl. ¶

26   13.)  Likewise, the Court finds that Plaintiffs' counsel will adequately represent the class, as they

27   are experienced in prosecuting wage and hour class actions.  (*See* Bae Decl. ¶¶ 66–72.)

28          The only argument that Defendant raises as to the adequacy of representation concerns

1    Plaintiff Wiggs's adequacy in representing Subclass III on the bag check claims.  (ECF No. 68 at

2    16.)  Specifically, Defendant asserts that because of "the significant differences between Wiggs's

3    claimed personal experience and that of other putative class members, her claims are not typical

4    of other class members, and therefore, she cannot be an adequate representative."  (ECF No. 68 at

5    17.)  This argument is really more akin to a typicality challenge than a representation challenge

6    and has already been rejected by this Court.[4]  As such, the Court finds that Plaintiffs have met

7    their burden of showing adequate class representation.

8              B.      Rule 23(b)

9              Plaintiffs assert that class certification is appropriate pursuant to Federal Rule of Civil

10   Procedure 23(b)(3).  Rule 23(b) provides that a class action may be maintained if Rule 23(a) is

11   satisfied and if:

12                        (3) the court finds that the questions of law or fact common to class
                          members predominate over any questions affecting only individual
13                        members, and that a class action is superior to other available
                          methods for fairly and efficiently adjudicating the controversy. The
14                        matters pertinent to these findings include:

15                        (A) the class members' interests in individually controlling the
                          prosecution or defense of separate actions;
16
                          (B) the extent and nature of any litigation concerning the
17                        controversy already begun by or against class members;

18                        (C) the desirability or undesirability of concentrating the litigation
                          of the claims in the particular forum; and
19
                          (D) the likely difficulties in managing a class action.
20

21   While Rule 23 states that these factors are pertinent to the assessment of predominance and

22   superiority, most courts analyze the Rule 23(b)(3)(A)–(D) factors solely in determining whether a

23   class suit will be a superior method of litigation.  *See Zinser v. Accufix Research Inst., Inc.*, 253

24   F.3d 1180, 1191 (9th Cir.) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

25              i.      *Predominance*

26              "Implicit in the satisfaction of the predominance test is the notion that the adjudication of

27   common issues will help achieve judicial economy."  *Id.* at 1189.  Class certification under Rule

28   _____

     [4]      *See supra* Section III(A)(iii).

1    23(b)(3) is proper when common questions constitute a significant portion of the case. *See*

2    *Hanlon*, 150 F.3d at 1022. For establishing predominance, the applicable inquiry is "whether

3    proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

4    *Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Predominance is a test readily met in certain

5    cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625.

6         Plaintiffs assert that each subclass is predominated by the same issues of law because each

7    subclass is predicated on a specific policy that applied to each subclass member. Defendants

8    raise issues concerning Subclasses III, IV, V, and VI. Because the Court finds that all eight

9    Subclasses are based on Defendant's uniform policies and practices and thus the same issues

10    predominate, the Court limits the inquiry below to the arguments raised by Defendant concerning

11    predominance.[5]

12         As previously discussed in this Court's examination of commonality, the same questions

13    of fact are at issue in the proposed class's Subclaims.[6] Essentially the same arguments that

14    Defendant posed for commonality are also alleged as reasons why the predominance factor is not

15    met under Rule 23(b), i.e. the same issues do not predominate over: Subclass IV because

16    Plaintiffs do not adequately explain how common questions predominate over claims concerning

17    the use of paycards (ECF No. 68 at 26); and Subclass V because managers have discretion as to

18    the precise time an employee is scheduled for a meal break, and thus common questions do not

19    predominate over the subclass (ECF No. 68 at 19). Additionally, Defendant asserts that common

20    questions of law do not predominate Subclass III's claims because an individualized inquiry is

21    required to determine whether time spent undergoing bag checks is compensable and to determine

22    whether the *de minimus* defense is applicable. (ECF No. 68 at 12–14). Defendant also argues

23    that Subclass VI's claims do not predominate because PVH's policies were applied in accordance

24    with California law (ECF No. 68 at 23).

25    ///

26

---

27    [5]      Defendant also asserts that Subclass VII is derivative of Plaintiffs' other Subclasses and thus fails because Plaintiffs other subclasses are allegedly not certifiable. (ECF No. 68 at 29.) Because this Court finds that Plaintiffs'

28    Subclasses are indeed certifiable, the Court need not address this argument.
     [6]      *See supra* Section III(A)(ii).

### a.   Subclass III

Defendant asserts that common questions of law do not predominate Subclass III's claims because an individualized inquiry is required to determine whether time spent undergoing bag checks is compensable and to determine whether the *de minimus* defense is applicable.  (ECF No. 68 at 12–14.)  First, the Court has already discussed that the bag check policy was a universal policy that was applied to all employees who brought purses or bags to work.  Any required inquiries can be made through surveys, sampling, and representative testimony.  Furthermore, the fact that different employees' time or wages will require an individualized inquiry does not defeat commonality.  *See In re Taco Bell Wage & Hour Actions*, No. 07–1314, 2012 WL 5932833, at *6 (E.D. Cal. Nov. 27, 2012) (where defendants admitted that there was a uniform policy but argued that "as a matter of practice, the policy is carried out in a variety of ways," the court relied on *Brinker* and found that it was sufficient that there was "a corporate policy that was equally applicable to all employees").

Next, even assuming the *de minimis* defense applies, the question of whether it is a valid defense is a common question that will generate a class-wide answer.  Moreover, should the question arise, it will arise in the damages context.  *See Otsuka v. Polo Ralph Lauren*, 251 F.R.D. 439, 448, n. 2 (N.D. Cal. 2008) (finding the common question predominated even after assuming that defendant is correct that application of *de minimus* rule might require inquiries into the individual experiences of class members because these individual questions will only arise after significant common questions of law and fact have been answered).  As such, the Court finds that common issues of law predominate Subclass III.

### b.   Subclass IV

Defendant argues that the paycards are a legal form of payment pursuant to California Labor Code section 212.  (ECF No. 68 at 26.)  Defendant asserts that their pay program provides employees with multiple methods to receive earned wages, and thus one must look at each employee to determine how that employee chose to use the program each time she withdrew any money from her account.   (ECF No. 68 at 27.)   Therefore, Defendant concludes that the subjective inquiry into each employee destroys predominance.

1    In response, Plaintiffs assert they have clearly identified the common policy-

2    automatically issuing the pay cards when an employee was hired- and it is the legality of this

3    policy that is being challenged.  (Reply, ECF No. 78 at 12–13.)  Plaintiffs assert that "this Court's

4    determination as to the legality of Defendant's policy in question would "produce in one stroke

5    answers that are central to the validity of [plaintiff's] claims."  (ECF No. 78 at 13 (citing *In re*

6    *Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)).)

7    This Court agrees. The legality of  Defendant's policy—which entails automatically

8    issuing paycards to its employees and thus puts the burden on the employees to request a different

9    option—does not require this Court to delve into each employees' subjective perception, as

10   Defendant asserts.  The policy is an issue "central to the validity of each one of the claims" and

11   thus predominates Subclass IV.  *See Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2551.

12                    C.    Subclasses V and VI

13   Defendant next argues that managers have discretion as to the precise time an employee is

14   scheduled for a meal break, and thus common questions do not predominate Subclass V.  (ECF

15   No. 68 at 19.)  Defendant states that "in practice, shifts – especially managerial shifts – are often

16   staggered to make breaks available at appropriate times.  Such variability shows there is no

17   widespread failure to make meal breaks available." (ECF No. 68 at 20.)  Moreover, Defendant

18   claims that "merely showing that an employee worked over five hours and did not clock out for a

19   meal break would not be determinative, especially since employees are permitted to waive meal

20   breaks if they work no more than six hours and there is mutual consent."  (ECF No. 68 at 20.)

21   Defendant asserts that variations among employee experiences preclude class certification.

22   Essentially, Defendant makes the same arguments as to Subclass VI, i.e., that the variation in how

23   managers and employees utilize or employ PVH's policies concerning rest period breaks is varied

24   and thus requires individual inquiries that defeat commonality.

25   This Court is not convinced.  As Defendant acknowledges, the policy provides for a "30

26   minute meal period after every 5 consecutive hours" and a "10 minute paid break for every 4

27   hours worked."  (Pls' Ex. LL.)  The meal period policy and the rest period policy were distributed

28   to store managers via memos from Defendant's Human Resources department with instructions to

16

1    review the policy with all employees, and it was reviewed with new hires.  (Bae Decl. ¶¶ 22–23,

2    Exs. O-P, X.)  Plaintiffs aver that both policies are facially defective.  (ECF No. 55-1 at 12.)

3    There is nothing ambiguous about the language of Defendant's policy.

4         In *Kurihara v. Best Buy Co., Inc.*, No. 06–1884 MHP, 2007 WL 2501698, at *6, (N.D.

5    Cal. Aug. 30, 2007), Judge Patel was confronted with the same issue in the context of a uniform

6    inspection policy.  There, he explained that "courts' discomfort with individualized liability

7    issues is assuaged in large part where the plaintiff points to a specific company-wide policy or

8    practice that allegedly gives rise to consistent liability."  *Id.* at *9–*10.  Although he

9    acknowledged that "a mere allegation of a company-wide policy does not compel class

10   certification," he noted that the plaintiff there had "provided substantial evidence of a company-

11   wide policy where employees are subject to inspections, and are not compensated for the time

12   spent on those inspections."  *Id.* at 10.  He concluded that "[a]lthough Plaintiff has submitted little

13   or no evidence as to the implementation of that policy, the detailed nature of the policy itself, and

14   the reasonable inferences which can be drawn from them, constitute sufficient evidence to satisfy

15   plaintiff's burden as to the predominance of common questions."  *Id.*

16        Similarly, other courts have likewise held that claims based on a uniform policy are

17   entitled to class certification. *See, e.g., Brinker Restaurant Group v. Superior Court*, 53 Cal. 4th

18   1004, 1020, 1033 (2012) (finding, despite the fact that "Brinker submitted hundreds of

19   declarations in support of its opposition to class certification," that "[c]laims alleging that a

20   uniform policy consistently applied to a group of employees in violation of the wage and hour

21   laws are of the sort routinely, and properly, found suitable for class treatment."); *Vedachalam v.

22   Tata Consultancy Servs., Ltd.*, No. 06–0963, 2012 WL 1110004, at *12–*13 (N.D. Cal. April 2,

23   2012) (rejecting defendants' argument that "this policy was not always uniformly applied"); *In re

24   Taco Bell Wage & Hour Actions*, No. 07–1314, 2012 WL 5932833, at *6 (E.D. Cal. Nov. 27,

25   2012) (where defendants admitted that there was a uniform policy but argued that "as a matter of

26   practice, the policy is carried out in a variety of ways," the court relied on *Brinker* and found that

27   it was sufficient that there was "a corporate policy that was equally applicable to all employees");

28   *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 534 (N.D. Cal.

17

1   2012) (finding that a subclass's claims were based entirely on the legality of the defendant's

2   uniform written rest break policy, and thus common questions predominated).  Thus, the Court

3   finds that Plaintiffs have met their burden of showing that company-wide policies exist

4   concerning meal and rest breaks and that the legality of those policies predominates over both

5   Subclasses V and VI.

6        *ii.*     *Superiority*

7        The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class

8   action is superior to other available methods for the fair and efficient adjudication of the

9   controversy."  Fed. R. Civ. P. 23(b)(3).  "Where it is not economically feasible to obtain relief

10  within the traditional framework of a multiplicity of small individual suits for damages, aggrieved

11  persons may be without any effective redress unless they may employ the class action device."

12  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

13       Given the small size of each class member's claims in this situation, class treatment is not

14  merely the superior, but the only manner in which to ensure fair and efficient adjudication of the

15  present action.  *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011)

16  (finding superiority where the proposed class member's individual claims were minimal);

17  *Pecover v. Elec. Arts Inc.*, No. C 08–2820, VRW 2010 U.S. Dist. LEXIS 140632, at *68, 2010

18  WL 8742757 (N.D.Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser

19  renders individual prosecution impractical.  Thus, class treatment likely represents plaintiffs' only

20  chance for adjudication.")   Furthermore, "each member of the class pursuing a claim individually

21  would burden the judiciary, which is contrary to the goals of efficiency and judicial economy

22  advanced by Rule 23."  *Bruno*, 280 F.R.D. at 537–38*; see also Vinole v. Countrywide Home*

23  *Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by

24  class representation would further the goals of efficiency and judicial economy.").  Therefore, the

25  Court finds that a class action is superior to other available methods for the fair and efficient

26  adjudication of this controversy.

27  ///

28  ///

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby orders as follows:

(1) Plaintiffs' Motion for Class Certification (ECF No. 55) is GRANTED

(2) Defendant's Motion to Strike the Declaration of Dakkar Hunter (ECF No. 69) is GRANTED; and

(3) Plaintiffs' Motion to Exclude Defendant's Exhibits 11–24, 26, 27, 29–32, and 44 (ECF No. 83) is DENIED.

IT IS SO ORDERED.

Dated:  November 19, 2015

Troy L. Nunley
United States District Judge