UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODI SCOTT-GEORGE, individually and on behalf of other members of the general public similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PVH CORPORATION, a Delaware corporation, and DOES 1 through 50, inclusive,<br><br>Defendant. | No. 2:13-cv-0441-TLN-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court pursuant to Defendant PVH Corporation's ("Defendant and PVH") motion for partial summary judgment. (ECF No. 114.) Named Plaintiffs Jodi Scott-George and Melissa Wiggs's (collectively referred to as "Plaintiffs") oppose Defendant's motion. (ECF No. 116.) Defendant has filed a reply. (ECF No. 118.) The Court has carefully considered the arguments raised in the parties' briefing. For the reasons set forth below, Defendant's motion is hereby GRANTED IN PART and DENIED IN PART.

    **I.**    F<small>ACTUAL</small> B<small>ACKGROUND</small>

PVH is a publicly traded company, incorporated in the state of Delaware, which operates various clothing brands and sells clothes as a wholesaler and a retailer. (Pls' Response to Def's Separate Statement of Undisputed Material Facts ("SMF"), ECF No. 116-6, SMFs 5, 8.) PVH

1

directly operates stores under the brands Van Heusen and IZOD in California.  (ECF No. 116-6, SMF 6.)  PVH Retail Stores, LLC ("Retail Stores") is a subsidiary corporation of PVH.  (ECF No. 116-6, SMF 9.)

Plaintiffs are former retail store employees of PVH.  (ECF No. 116-6, SMFs 1, 3.)  Ms. Scott-George worked at a G.H. Bass & Co. store, which was previously owned by PVH, and Ms. Wiggs worked at a Van Heusen store, a brand still operated by PVH.  (ECF No. 116-6, SMF 3–4.)  Plaintiffs have alleged seven causes of action against PVH based on violations of California Labor Code §§ 226.7, 510, 512(a), 1194, and 1198.

In this Court's previous order, the Court granted class certification and certified the following subclasses:

> (1) Overtime I Subclass (non-payment of regular overtime): All nonexempt employees who worked in excess of 8 hours (but less than 12 hours) in a workday or in excess 40 hours in a workweek without receiving the appropriate overtime wage that is one and a half times the regular rate pay, while working for Defendant in California from March 20, 2009 to the present.
>
> (2) Overtime II Subclass (non-payment of double overtime): All nonexempt employees who worked in excess of 12 hours in a workday without receiving the appropriate overtime wage that is twice the regular rate pay, while working for Defendant in California from March 20, 2009 to the present.
>
> (3) Security Bag Check Subclass: All nonexempt employees who were subjected to a security bag check while working for Defendant in California from March 20, 2009 to the present.
>
> (4) Paycard Subclass: All nonexempt employees who received their earned wages via the Money Network paycard system while working for Defendant in California from March 20, 2009 to the present.
>
> (5) Meal Period Subclass: All nonexempt employees who did not receive a compliant meal period, while working for Defendant in California from March 20, 2009 to the present.
>
> (6) Rest Period Subclass: All nonexempt employees who did not receive a compliant rest period, while working for Defendant in California from March 20, 2009 to the present.
>
> (7) Late Pay Subclass: All nonexempt employees who worked for Defendant in California whose employment ended between March 20, 2010 and the date of certification, who did not receive all wages due at the time they were terminated or otherwise stopped working for Defendant.

(8) Wage Statement Subclass: All nonexempt employees who received non-compliant wage statements while working for Defendant in California from March 20, 2009 to the present.

(Order, ECF No. 112.)  Plaintiff Jodi Scott-George is the Class Representative for subclass (1), (2), (5), (6) and (7).  Plaintiff Melissa Wiggs is the Class Representative for the subclass (3), (4), (6), (7) and (8).

In its order, the Court considered the wage and hour policies of both PVH and Retail Stores and found that because the policies were identical, nonexempt employees of both companies would be similarly situated under Rule 23.  *See* Fed. R. Civ. P. 23.  Thus, the Court certified a class of all nonexempt employees of both PVH and Retail Stores.  In doing so, the Court made a determination as to whether the class action could be maintained.  However, the Court did not decide whether piercing the corporate veil would be appropriate.[1]  Federal Rule of Civil procedure Rule 23(c)(1) specifically provides that a district court's determination on the maintainability of a class action "may be conditional, and may be altered or amended before the decision on the merits." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982).  At the time of class certification, the Court made a determination that should Plaintiffs be able to prove their allegations—that PHV and Retail Stores are integrated—the nonexempt employees of both companies would be similarly situated for typicality purposes.  *See id.* ("[B]efore entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative.").

Following the Court's order granting class certification, Defendant moved for summary judgment. (ECF No. 114.)

## II.  LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under

---

[1] Although the Court did not explicitly state that it was not making such a determination, to do so at the class certification stage of the litigation would have been inappropriate.

1  summary judgment practice, the moving party always bears the initial responsibility of informing
2  the district court of the basis of its motion, and identifying those portions of "the pleadings,
3  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"
4  which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*
5  *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof
6  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
7  solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at
8  324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party
9  who does not make a showing sufficient to establish the existence of an element essential to that
10 party's case, and on which that party will bear the burden of proof at trial.

11     If the moving party meets its initial responsibility, the burden then shifts to the opposing
12 party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec.*
13 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*
14 *Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual
15 dispute, the opposing party may not rely upon the denials of its pleadings, but is required to
16 tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
17 support of its contention that the dispute exists. Fed. R. Civ. P. 56(c).  The opposing party must
18 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
19 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that
20 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
21 the nonmoving party. *Id.* at 251–52.

22     In the endeavor to establish the existence of a factual dispute, the opposing party need not
23 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
24 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
25 trial." *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to
26 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
27 trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963
28 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

Defendant moves for partial summary judgment and asserts: (1) Plaintiffs cannot impose liability on Retail Stores because they have sued PVH not its subsidiary, Retail Stores, and have failed to justify disregarding the corporate form; (2) Plaintiff cannot succeed on their claim concerning bag checks because carrying a bag is optional and the time associated with such bag checks is *de minimis*; and (3) Plaintiffs seek damages under an outdated section of California Labor Code §226(a), which imposes penalties for improperly recorded wage statements. (ECF No. 114 at 1.) The Court addresses each argument below.

A. <u>Subsidiary Liability</u>

Defendant moves for summary judgment arguing that PVH is not liable for its subsidiaries:

> PVH Corp. is the sole named defendant. Both named Plaintiffs worked for PVH Corp., and not PVH Retail Stores LLC, *see* Ex. A, Scott-George Depo. 28:7–14; Wiggs Depo. 11:18. At no time have Plaintiffs sought to add PVH Retail Stores, LLC as a defendant. Yet, in their Motion for Class Certification, Plaintiffs argue that PVH Corp. bears liability for alleged violation at PVH Retail Stores, LLC.

(ECF No. 114 at 6.) Plaintiffs assert that this Court has held that PVH "as the parent company

5

1  imposes identical wage and hour policies for PVH Retail [Stores], LLC" and thus reasons that
2  this Court "already adjudicated this issue after weighing the evidence, the ruling is now the law of
3  the case." (ECF No 116 at 3.)
4       As referenced in the Factual Background Section of this Order, the Court's past
5  statements concerning identical policies employed by PVH and Retail Stores were made in
6  reference to typicality arguments raised by the parties.  At no time did this Court make a
7  determination as to whether Plaintiffs could bring suit against a subsidiary not named as a
8  defendant in this lawsuit.  A motion for class certification is not the appropriate vehicle for
9  making such a determination, whereas this issue could be decided on a motion for summary
10 judgment, barring a dispute of material fact.
11      In defense of Defendant's motion for summary judgment as to this claim, Plaintiffs assert
12 that Defendant does not meet its burden for summary judgment: "Defendant, as the moving party,
13 has the initial burden of production and the ultimate burden of persuasion, but it falls very short
14 of meeting its burden, not to mention that Defendant is ignoring Plaintiffs' evidence establishing
15 control." (ECF No. 116 at 6.)  Thus, the Court finds it necessary to address the standard for
16 summary judgment before delving into the applicable factors and test for piercing the corporate
17 veil.  Plaintiffs are correct that "[a] moving party without the ultimate burden of persuasion at
18 trial—usually but not always the defendant—has both the initial burden of production and the
19 ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins.*
20 *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The moving party may carry its
21 burden of production on summary judgment either by disproving an essential element of the
22 opposing party's claim or defense or showing that the opposing party does not have enough
23 evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion
24 at trial.  *Id.* at 1102.  In the instant matter, Plaintiff must prove at trial that PVH and Retail Stores
25 are integrated enterprises to pierce the corporate veil since Retail Stores is not a defendant in this
26 action.  Defendant argues that Plaintiffs cannot meet the requirements to establish liability
27 because Plaintiffs have failed to allege facts to support that the parent, PVH, exercised control
28 greater than normally exercised by a parent company.  (ECF No. 114 at 3.)  Thus, in arguing that

6

1  Plaintiffs do not have enough evidence to establish liability, Defendant's motion for summary
2  judgment is proper and the Court next turns to whether Plaintiffs have alleged facts that would
3  support imposing liability on Retail Stores.
4      "It is well recognized that the law permits the incorporation of businesses for the very
5  purpose of isolating liabilities among separate entities." *Pac. Landmark Hotel, Ltd. v. Marriott*
6  *Hotels, Inc.*, 19 Cal. App. 4th 615, 628 (1993), *as modified on denial of reh'g* (Nov. 5, 1993)
7  (citing *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1576 (10th Cir. 1990)).
8  Because society recognizes the benefits of allowing "organizations to limit their business risks
9  through incorporation, sound public policy dictates that disregard of those separate corporate
10 entities be approached with caution." *Id.* (citing *Las Palmas Assocs. v. Las Palmas Center*
11 *Associates*, 235 Cal. App. 3d 1220, 1249 (1991)). However, in specified "narrowly defined
12 circumstances" and "when the ends of justice so require," a court may disregard the corporate
13 form to hold the shareholders responsible as the "alter ego" of the corporation. *Mesler v. Bragg*
14 *Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985); *Slottow v. Am. Cas. Co.*, 10 F.3d 1355, 1360 (9th Cir.
15 1993). Under California law, "[a]lter ego is an extreme remedy, sparingly used." *Sonora*
16 *Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000). Moreover, "the law as to
17 whether courts will pierce the corporate veil is easy to state but difficult to apply." *Talbot v.*
18 *Fresno–Pacific Corp.*, 181 Cal. App. 2d 425, 432 (1960). There is no litmus test to determine
19 when the corporate veil will be pierced; rather the result will depend on the circumstances of each
20 particular case. *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 702 P.2d 601, 606 (1985).
21     "Because it is founded on equitable principles, application of the alter ego 'is not made to
22 depend upon prior decisions involving factual situations which appear to be similar.'. . . 'It is the
23 general rule that the conditions under which a corporate entity may be disregarded vary according
24 to the circumstances of each case.'" *Las Palmas Assocs.*, 235 Cal. App. 3d at 1248 (quoting
25 *McLoughlin v. L. Bloom Sons Co., Inc.*, 206 Cal. App. 2d 848, 853 (1962)). In order for Plaintiffs
26 to succeed on their claims, Plaintiffs must meet the "integrated enterprise" test set forth in *Laird*
27 *v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998) *overruled on other grounds by Reid*
28 *v. Google*, 50 Cal. 4th 512 (2010). Separate companies are only an "integrated enterprise" with a

7

showing of: interrelated operations, common management, centralized control of labor relations, and common ownership or financial control. *Id.* at 737. Courts consider all of the four factors together, but have deemed centralized control of labor relations the most important. *Id.* at 738; *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 764 (5th Cir. 1997); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993). Common ownership or control alone is never enough to establish parent liability. *Frank*, 3 F.3d at 1364. The *Laird* court recognized that centralized control―and more particularly, control of day-to-day employment decisions at the subsidiary, not just "broad general policy statements"―is the most important consideration. *See Laird*, 68 Cal. App. 4th at 738. The heavy burden required to overcome the presumption that the parent is not liable for the subsidiary's actions cannot be carried by mere human resources policies and payroll processing. *See Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1126, 1240 (C.D. Cal. 2007).

> To make a sufficient showing of "interrelation of operations" on summary judgment, the plaintiff must do more than merely show that officers of the subsidiary report to the parent corporation or that the parent benefits from the subsidiary's work. Since these facts exist in every parent-subsidiary situation, such a showing would create a triable issue of material fact in every case. What the plaintiff must show, rather, is that the parent has exercised control "to a degree that exceeds the control normally exercised by a parent corporation."

*Laird*, 68 Cal. App. 4th at 738 (quoting *Frank*, 3 F.3d at 1362).

Plaintiffs offer the following arguments for piercing the corporate veil: (1) PVH's payroll department processes payroll for Retail Stores; (2) PVH's Human Resources Department handles employees issues for Retail Stores; (3) numerous human resources documents of PVH also apply to Retail Stores' brands, such as Calvin Klein, which are under the umbrella of PVH's Retail Division; (4) emails that were disseminated from PVH's headquarters were also sent to all Calvin Klein stores in the United States; (5) even though G.H. Bass was a brand owned solely by PVH, the Asset Purchase Agreement for the sale of G.H. Bass shows that Retail Stores was a party to the transaction. (ECF No. 116 at 4–7.)

As discussed below, taking all of Plaintiffs' allegations and evidence as true and credible, the Court is not convinced that Plaintiffs have presented enough evidence to raise a triable issue

of fact under the integrated enterprise test. Specifically, Plaintiffs fail to produce evidence that would suggest that PVH exercised day-to-day control over Retail Store's employment decisions.

### 1. Interrelated Operations

As to the first factor— interrelated operations—Plaintiffs assert that PVH's payroll and human resource services provide service for both PVH and Retail Stores. (ECF No. 116 at 4.) However, this does not suffice to show an integrated enterprise: "A parent corporation may provide administrative services to subsidiaries without exercising control that rises to the degree to deem it a joint employer with the subsidiaries." *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 343 (W.D. Pa. 2010); *see also Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443–44 (4th Cir. 1999) (in the context of the FMLA, explaining that a parent's practice of providing administrative services to its subsidiaries "is not unusual in today's business climate and is of no consequence.... Firms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or by ownership...."). Thus, to succeed under this factor, "a plaintiff may submit evidence demonstrating interrelated operations, such as 'combined accounting records, bank accounts, lines of credit, payroll preparation, telephone lines, or offices, and interchange of employees.'" *Taylor v. Shippers Transp. Exp., Inc.*, No. CV 13-02092 BRO PLAX, 2014 WL 7499046, at *18 (C.D. Cal. Sept. 30, 2014) (quoting *Van Norman v. Harmon Mgmt. Corp.*, C93–2880 MHP, 1995 WL 803508, at *4 (N.D. Cal. July 6, 1995)). In the instant case, Plaintiffs have not provided such evidence.

### 2. Common Management

Under the second factor, common management, the Court considers "whether the entities have common officers, directors, and managers." *EEOC v. Con–Way, Inc.*, No. CV-06-1337-MO, 2007 WL 2610367, at *5 (D. Or. Sept. 4, 2007); *see also Taylor, Inc.*, 2014 WL 7499046, at *20 (citing *Con-Way*). Plaintiffs assert that there is shared management between the companies because the same Executive Vice President, Mark Fischer, signed on behalf of Retail Stores and PVH in executing an asset purchase agreement. (*See* ECF No. 116-2 at 72.) "One common manager is insufficient to establish a disputed material fact under this prong of the integrated

9

enterprise test." *Frank*, 3 F.3d at 1364; *Compare United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership.") *with Taylor*, 2014 WL 7499046, at *19 (finding common management where the plaintiff identified that two companies shared the executive vice president as well as seven officers, executives, or managers). "Rather, the plaintiff must provide evidence that individuals served as a manager of both corporations, that at least one manager of the parent corporation made or influenced 'day-to-day managerial decision [s]' for the subsidiary, or that certain managers were transferred from one corporation to the other." *Taylor*, 2014 WL 7499046, at *19 (citing *Laird*, 68 Cal.App.4th at 740 and *Trosper v. Stryker Corp.*, No. 13–CV–0607–LHK, 2014 WL 1619052, at *8 (N.D. Cal. April 22, 2014)). "Without any such showing, the plaintiff cannot create an issue of fact regarding common management between the two entities." *Id.* Thus, the Court finds that Plaintiffs have not presented sufficient evidence to show that PVH exerts the amount of control over Retail Stores that California law requires to find common management for purposes of piercing the corporate veil.

### 3. *Centralized Control of Labor Relations*

Under the third and most important factor, centralized control of labor relations, the operative question is "what entity made the final decisions regarding employment matters related to the plaintiffs." *Laird*, 68 Cal. App. 4th at 738; *see also Taylor*, 2014 WL 7499046, at *20 (quoting *Laird*). Defendant asserts that Plaintiffs have failed to allege facts to support that the parent, PVH, exercised control greater than normally exercised by a parent company. (ECF No. 114 at 7.) Plaintiffs counter that summary judgment is inappropriate due to material questions of fact pertaining to control:

> First, numerous human resources documents of PVH Corp. also apply to PVH Retail Stores, LLC's brands, such Calvin Klein, which are under the umbrella of PVH Corp.'s Retail Division. *See* Bae Decl. ¶ 19, Ex. 13 (Retail Division Employment Application); *id.* ¶ 20, Ex. 14 (Incident Report); *id.* ¶ 21, Ex. 15 (90-Day Evaluation); *id.* ¶ 22, Ex. 16 (Change/Termination Action Form); and *id.* ¶ 23, Ex. 17 (The Sentinel / Security Newsletter). Furthermore, emails that were disseminated from PVH Corp.'s headquarters were also sent to all Calvin Klein stores in the United

> States, contrary to Defendant's assertion that PVH Retail Stores, LLC's brands were separately operated. Additionally, even though G.H. Bass was a brand owned solely by PVH Corp. according to Defendant, the Asset Purchase Agreement for the sale of G.H. Bass shows that PVH Retail Stores, LLC was a party to the transaction.

(ECF No 116 at 7.)

Here, both Named Plaintiffs worked for the parent company, PVH. The integration arguments presented by Plaintiffs revolve around the idea that PVH Corp., as the parent company, imposed its policies on the subsidiary Retail, not vice versa. The application of the case law to the instant matter is a bit odd because instead of trying to hold a parent liable for acts of the subsidiary, Plaintiffs are attempting to pierce the corporate veil in the opposite direction, alleging subsidiary liability because of the acts of the parent. If the Court were to strictly apply the case law, then the Court would normally consider whether Named Plaintiffs' employment decisions were made by the company that plaintiffs are seeking to establish liability for, Retail Stores. The Court cannot find that Retail Stores made any decisions concerning Named Plaintiffs or the subclasses that they represent. Thus, even assuming all of Plaintiffs' allegations concerning integrations between the two companies are true, the Court does not have evidence of PVH Retail controlling employees of PVH Corp. However, due to the nature of the allegations, the Court cannot stop its analysis here because to do so would create an irrational outcome. Thus, the Court instead looks at whether, based on Plaintiffs' allegations and evidence thereof, PVH and Retail Stores could be considered to be under the same day-to-day management.

Plaintiffs allege that PVH controls the day-to-day actions of Retail Stores and contend that PVH's dissemination of emails, policies and training materials to Retail Stores proves that fact. However, the Court is not aware of any case law, and Plaintiffs have surely not provided any in their opposition, that would suggest that a parent company opens its subsidiaries up to liability merely by providing policies or support to its subsidiaries. Plaintiffs' arguments concerning the similarity of systems and policies governing both PVH's and Retail Stores' employees do not impart the requisite level of control that is required to disregard the separate corporate structures of the two companies. *See Frank v. U.S. West, Inc.*, 3 F.3d at 1363 ("To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary."); *Maddock v. KB*

*Homes, Inc.*, 631 F. Supp. 2d 1226, 1241–42 (C.D. Cal. 2007) ("Here, plaintiff has not produced evidence to establish that KB Home exercised or enjoyed the sort of day-to-day control over KBLA's employment decisions that would satisfy the control prong of the integrated enterprise test. Plaintiff's argument that KB Home controlled KBLA's employment decisions rests on evidence that KB Home disseminated training materials to its subsidiaries and their sales agents and provided strategic human resource guidance, direction, and support to the management of these subsidiaries."); *Cellini v. Harcourt Brace & Co.*, 51 F. Supp. 2d 1028 (S.D. Cal. 1999) (finding parent not liable when it provided employee benefits programs to subsidiary, issued code of conduct that applied to subsidiary's employees, and provided sexual harassment seminars for subsidiary's employees).; *see also Pac. Landmark Hotel, Ltd.*, 19 Cal. App. 4th at 628 ("It is well recognized that the law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities."). Therefore, Plaintiffs' allegations of emails between PVH and Retail Stores and/or other brands owned by Retail Stores concerning procedures and policies do not rise to the level of day-to-day control required to pierce the corporate veil under California law. Simply put, Plaintiffs have not presented evidence to support that PVH and Retail Stores have a centralized control of labor relations.

### 4. Common Ownership or Financial Control

As to the final factor, common ownership or financial control, "although this factor 'alone is never enough to establish ... liability,'" this Court will nevertheless consider whether the two entities share common ownership or financial control. *Taylor*, 2014 WL 7499046, at *22 (quoting *Laird*, 68 Cal. App. 4th at 738); *see also Trosper*, 2014 WL 1619052, at *9 ("Courts have recognized this factor as being the least important of the four."). Plaintiffs have presented evidence of common ownership or financial control, i.e. "even though G.H. Bass was a brand owned solely by PVH, the Asset Purchase Agreement for the sale of G.H. Bass shows that Retail Stores was a party to the transaction," and an Asset Purchase Agreement listing Retail Stores, before PVH as the seller. (*See* Bae Decl. ¶ 9, Ex. 4, ECF No. 116-2.) As previously mentioned, Plaintiffs have also shown that the same Executive Vice President signed on behalf of Retail Stores and PVH. (ECF No. 116-2 at 72.) While this factor is likely the least important in this

1  analysis, it does favor Plaintiffs.  Unfortunately, this factor alone does not suffice to establish
2  liability.
3        Plaintiffs have failed to establish the first and second factors, as well as the important third
4  factor of the integrated enterprise test.  Given the strong presumption under California law that a
5  parent company is not the employer of its subsidiary's employees, the Court concludes that these
6  deficiencies are fatal to Plaintiffs' integrated enterprise theory of liability.  As such, the Court
7  finds that Plaintiffs' failure to name Retail Stores as a defendant in this law suit has restricted the
8  class to those employed by PVH.
9        B.  Plaintiffs' Bag Check Claim
10        On November 20, 2015, this Court certified a Security Bag Check Subclass consisting of
11  "All nonexempt employees who were subjected to a security bag check while working for
12  Defendant in California from March 20, 2009 to the present."  (Order, ECF No. 112.)  Plaintiffs
13  brought their Seventh Cause of Action predicated on the theory that Defendant's policy and
14  practice of not compensating for the time that Subclass members spent undergoing security bag
15  checks violate California Labor Code §§ 510, 1194 and 1198, as well as California Business &
16  Professions Code §§ 17200.  (Third Am Compl. ("TAC"), ECF No. 41 at ¶ 93.)
17        Defendant moves for summary judgment, asserting that the time spent undergoing bag
18  checks is not compensable and is *de minimis*.  Specifically, Defendant argues that under the
19  California Supreme Court's holding in *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578
20  (2000), the time is not compensable.  Defendant also points to the Northern District of
21  California's recent decision in *Frlekin v. Apple Inc.*, No. C 13-03451 WHA (lead), 2015
22  Wl68514424 (N.D. Cal. Nov. 7, 2015), in which the district court granted summary judgment to
23  Apple under similar circumstances.  Plaintiffs assert that the instant case is distinguishable from
24  *Frlekin* and that Defendant's interpretation of the *Morillion* holding is misguided.  This Court
25  disagrees and for the reasons set forth below grants Defendant's motion for summary judgment as
26  to Plaintiffs' Seventh Cause of Action.
27        California law defines "compensable hours" as "the time during which an employee is
28  subject to the control of an employer, and includes all the time the employee is suffered or

permitted to work, whether or not required to do so." Cal. Code Regs. Tit. 8, § 11140(2)(G). "The California Supreme Court has held that the two phrases—'subject to the control of an employer' and 'time the employee is suffered or permitted to work'—are 'independent factors, each of which defines whether certain time spent is compensable as hours worked.'" *Frlekin*, 2015 Wl68514424, at *3 (quoting *Morillion*, 22 Cal. 4th at 582). "[T]he two phrases—time during which an employee is subject to the control of an employer and time the employee is suffered or permitted to work, whether or not required to do so—can also be interpreted as independent factors, each of which defines whether certain time spent is compensable as hours worked." *Morillion*, 22 Cal. 4th at 582 (internal quotations omitted). "Thus, an employee who is subject to an employer's control does not have to be working during that time to be compensated." *Id.*

### 1. Subject to Control

To be successful on a control theory of liability, the party must prove two different elements: "The first is that the employer restrains the employee's action during the activity in question. The second is that the employee has no plausible way to avoid the activity; put differently, the activity must be mandatory and not optional at the discretion of the worker." *Frlekin,* 2015 WL 6851424, at *3. The California Supreme Court and the Ninth Circuit have emphasized the mandatory nature of activities in determining whether an activity is compensable. *See Morillion*, 22 Cal. 4th at 578; *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1053 (9th Cir. 2010). The question of whether an employee is entitled to compensation may hinge on whether the activity is mandatory. *See Frlekin,* 2015 WL 6851424, at *3 (holding that choice is dispositive).

### 2. Mandatory Activity

In *Morillion*, the California Supreme Court concluded that time spent commuting on a company bus was compensable because it was mandatory. 22 Cal. 4th at 578. The employer's work rules explicitly prohibited employees from using their own transportation, *id.* at 579, and employees were subjected to verbal warnings and lost wages if they used their personal vehicles to get to the job site, *id.* at 587. The court held, "the level of the employer's control over its employees, rather than the mere fact that the employer require[d] the employees' activity, is

14

1  determinative." *Id.* at 587.  The *Morillion* court distinguished its decision from *Vega v. Casper*,
2  36 F.3d 417 (5th Cir. 1994), stating that "the fact that the Vega employees were free to choose—
3  rather than required—to ride their employer's buses to and from work, a dispositive,
4  distinguishing fact." *Id.* at 589 n.5.

5  In contrast, in *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 272 (2006), the
6  California Second District Court of Appeal held that an employer did not need to compensate its
7  employee for time on an employer-provided shuttle bus from an off-site parking lot to the
8  employee entrance to Disneyland (where he worked) because the employee had the option of
9  using alternative forms of transportation.  Thus, the employee's choice to avail himself of the
10  shuttle instead of alternative forms of transportation, such as walking or biking the one-mile
11  distance from the off-site parking lot, being dropped off at the employee entrance by a friend, or
12  taking a vanpool (which would have been permitted to park in a closer lot), was determinative.
13  The California Court of Appeal and federal courts hold that when employees exercise an option
14  offered by their employer, they are not subject to the control of the employer.  *See id.* at 265;
15  *Frlekin*, 2015 WL 6851424, at *5; *Novoa v. Charter Commc'ns, LLC*, No. 1:13-CV-1302-AWI-
16  BAM, 2015 WL 1879631, at *7 (E.D. Cal. Apr. 22, 2015); *Alcantar v. Hobart Serv.*, No. ED CV
17  11-1600 PSG, 2012 WL 6539547, at *3 (C.D. Cal. Dec. 13, 2012) *reversed on other grounds*,
18  800 F.3d 1047 (9th Cir. 2015).  The Court finds that the same rationale applies to the instant
19  matter.

20  In *Frlekin*, the Northern District court of California found that defendant Apple's personal
21  package and bag search policy did not meet *Morillion's* "subject of control test" in order to be
22  compensable.  *Id.* at *4–5.  "Rather than prohibiting employees from bringing bags and personal
23  Apple devices into the store altogether, Apple took a milder approach to theft prevention and
24  offered its employees the option to bring bags and personal Apple devices into a store subject to
25  the condition that such items must be searched when they leave the store." *Id.* at *4.  Here, as in
26  *Frlekin*, employees are given the choice as to whether to take a bag to work.  There is no real
27  dispute as to the genuine nature of Plaintiffs' freedom to choose to avoid searches.  It is
28  undisputed that some employees did not bring bags to work and thereby did not have to be

15

searched when they left the store.[2]

Plaintiffs assert that the choice of bringing a bag to work is illusory:

> This argument ignores the practical realities of life of human beings, particularly that of workers who bring lunch, women and the frail. Hence, that choice is not genuine but illusory. For instance, many employees bring lunch to work and that requires a bag of some type, whether it be a brown bag, lunch bag, tote bag or bag pack. Especially for many lower wage hourly-paid workers, bringing lunch is a necessity such that they are not exercising a free choice to bring a lunch bag to work.

(ECF No. 116 at 11.) The Court is not convinced. Carrying a bag may be normal for women in our culture, but that does not equate it to a right. Furthermore, Plaintiffs' argument about the economic reasons that an employee may need to bring a lunch is illustrative of the fact that employees are given a choice: an employee can choose to bring lunch for financial reasons instead of eating out at lunch. That employee knows that the consequence of that action will be a bag search. Plaintiffs have failed to provide this Court with any case law supporting their assertion that the choice of carrying a bag is illusory. Moreover, it seems to this Court that there are alternatives that an employee can take, i.e. using a wallet instead of a bag or bringing a lunch in a clear ziplock bag or container.

Plaintiffs also assert that *Frlekin* is not instructive because there the class was limited to employees "who voluntarily brought a bag to work purely for personal convenience." (ECF No. 116 at 10.) "By limiting the certified class, the *Frlekin* ruling was analytically able to sidestep the issue that some employees need to bring a bag to work for one reason or another." (ECF No. 116 at 10.)

Defendant argues that Plaintiffs' briefing attempts to "distinguish this case from *Frlekin*

---

[2] *See* Vargas Caicedo Decl., ECF No. 144-4 at 160, ¶ 8 ("Of the 9 employees in our store, about 7 of the employees generally bring bags to work."); McCormick Decl., ECF No. 144-4 at 171, ¶ 16 ("[O]nly 4 out of 10 employees bring bags, usually purses. Sometimes employees who do not tend to bring bags into work will have a shopping bag when they return from lunch."); Maggy Decl., ECF No. 144-4 at 177, ¶ 10 (7 out of 14 employees bring bags to work regularly); King-Cantrell Decl., ECF No. 114-5 at 3,5 ¶¶ 4, 15 (5 out of 10 employees generally bring bags to work, usually medium-sized purses or clear plastic bags for lunch.); Brown Decl., ECF No. 114-5 at 29, ¶ 9 (4 out of 10 employees on staff in October 2014 brought bags daily.); Avery Decl., ECF No. 114-5 at 32, 34, ¶¶ 5, 17 (10 out of 12 employees generally bring bags to work, usually a medium-sized purse or bag.); Falkingham Decl., ECF No. 114-6 at 4, ¶ 9 (50% of the store's employees tend to bring bags, and "[s]ometimes employees who do not tend to bring bags into work will have a shopping bag when they return from lunch or a backpack if they are coming from school.").

by trying to re-define the class here to include a new sub-class of individuals who are required to bring in bags due to exigent circumstances." (Def's Reply, ECF No. 118 at 7.) Defendant contends that Plaintiffs provide no evidence for their assertion and that a class of persons required to carry a bag was never certified by this Court. (Def's Reply, ECF No. 118 at 7.) This Court agrees.

Although the *Frlekin* court distinguished between employees that brought a bag for convenience versus employees with special needs, the court did not make a finding as to how the bag check program would impact special needs employees:

> Apple argues that *Overton* directly applies here because the class is limited to the scenario of bags brought purely for personal convenience, so plaintiffs could freely choose to avoid the Apple's control during the searches by declining to bring a bag. Further, although class members were invited to intervene to litigate their special needs, if any, to bring a bag, no motions to intervene were filed.

*Id.* at *4. Here, the Subclass is defined as "All nonexempt employees who were subjected to a security bag check while working for Defendant in California from March 20, 2009 to the present." At no time prior to briefing on the present motion have Plaintiffs mentioned any special needs requiring the use of a bag. Moreover, Plaintiffs fail to show any evidence that such claims even exist. The Court is not going to redefine the Subclass based on an argument that is not supported by a factual basis. Thus, the Court finds this argument to be a nonstarter.[3] As such, the Court finds that Plaintiffs have failed to show that the bag checks are a mandatory activity under *Morillion* and hereby grants Defendant's motion for summary judgment as to this claim.[4]

C. Plaintiffs' Wage Statements Claim

Defendant moves for summary judgment as to Plaintiffs' wage statement claim asserting that recent amendments to the labor code (A.B. 1506) provide "employers thirty days to cure

---

[3] Plaintiffs are welcome to bring another class action lawsuit to enforce the rights of special needs employees as it applies to Defendants' bag search policy. However, the Court finds that it would be inappropriate to redefine the Subclass at this juncture of the litigation. Although the Subclass definition is broad, the Court finds that defining it as to include special needs at this time would destroy commonality and typicality among the Subclass, not to mention that Plaintiffs have not presented facts that would then support Named Plaintiff as a fair representative of such a Subclass.

[4] Because the time used to check bags is not compensable, the Court need not address Defendant's assertion that the time implementing the policy is *de minimis*.

violations of California Labor Code §226(a) ("Labor Code §226(a)") as it relates to the requirement to include the date of the period for which the employee is paid and the name and address of the legal entity that is the employer, prior to allowing any employee to bring legal action." (ECF No. 114 at 21.)  Defendant states that Plaintiffs' claim is based on two factual bases: first that the inclusive pay period was not printed in violation of Labor Code §226(a)(6); and second, that the total hours worked and the applicable hourly rates in effect during the pay period and the corresponding number of hours worked were improper.  (ECF No. 114 at 21–22.) Defendant argues that the failure to provide inclusive dates on the wage statements has already been cured and that the second factual basis—incorrect hours worked—is derivative of Plaintiffs' claims for unpaid overtime and meal and rest periods.  (ECF No. 114 at 21–22.)  Thus, Defendant reasons that this claim should be dismissed, since the wage statement dates have been cured and Plaintiffs' claims regarding the record of hour and hourly rate will be resolved by the resolution of Plaintiffs' claims for unpaid overtime and meal and rest periods.  (ECF No. 114 at 22.)

In opposition, Plaintiffs argue that the recent amendments to California's Private Attorneys General Act of 2004 ("PAGA") have no impact on Plaintiffs' claim because it is brought as a class action under Labor Code § 226(a) instead of as a PAGA claim.  (ECF No. 116 at 22.)  Furthermore, Plaintiffs assert that Defendant has not presented any evidence that it in fact cured deficiencies within its wage statements, and Plaintiffs thus conclude that Defendant has not met its evidentiary burden.  Finally, Plaintiffs contend that there is a dispute of material fact that precludes Defendant's motion for summary judgment as to whether class members suffered injury from Defendant's failure to include inclusive dates of the pay period.  (ECF No. 116 at 24.) For the reasons stated below, the Court finds that the recent amendments to the labor code (A.B. 1506) do not bar Plaintiffs' wage statement claim.

"PAGA claims are law enforcement actions, not class actions." *Mendez v. Tween Brands, Inc.*, No. 2:10-CV-00072-MCE, 2010 WL 2650571, at *4 (E.D. Cal. July 1, 2010).  A PAGA claim "is fundamentally different from a class action in terms of both the interests represented and the relief sought." *Id.* at *2.  The California Supreme Court held in *Arias v. Superior Court*, 46 Cal.4th 969, 986 (2009), that PAGA claims need not satisfy class action requirements because

under PAGA an employee plaintiff brings a claim "as the proxy or agent of the state's labor law enforcement agencies." Therefore, rather than representing a class of employees, such plaintiff "represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency." *Id.* at 986 (citing Cal. Lab. Code § 2699(a), (f)). PAGA "authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations, and an action to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Id.* at 986 (internal quotation marks and citations omitted); *see also Mendez*, 2010 WL 2650571, at *2 (quoting *Arias*); *Franco v. Athens Disposal Co., Inc.*, 171 Cal. App. 4th 1277, 1300 (2009) ("[A PAGA] action is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct. Restitution is not the primary object of a PAGA action, as it is in most class actions.").

In contrast, Plaintiffs brought this action pursuant to Federal Rule of Civil Procedure 23 which allows a party to bring a claim on his own behalf as well as those similarly situated. Fed. R. Civ P. 23. Plaintiffs have satisfied the requirements to bring this suit under Rule 23. (*See* Order, ECF No. 112.) The instant complaint does not allege violations under PAGA or seek to recover civil penalties under PAGA. (*See generally* TAC, ECF No. 41.) Thus, any amendments to PAGA do not affect Plaintiffs' claim.[5] Moreover, the Court is not convinced that had Plaintiffs' claim been brought under PAGA that the recent amendments would apply to Plaintiffs' claim retroactively, as Defendant suggests. Neither the amendment nor the legislative history provides for retroactive application, strongly supporting the notion that the amendments do not have any retroactive application. *See Myers v. Philip Morris Companies, Inc.*, 28 Cal. 4th 828, 841 (2002) (quoting *INS v. St. Cyr*, 533 U.S. 289, 320–21, n.45 (2001)) ("'[A] statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective.'"). Defendant has failed to provide this Court with any authority that would support

---

[5] Because Plaintiffs' claims are not brought under PAGA, Plaintiffs are foreclosed from recovering civil penalties under the Act.

1  an alternative interpretation.  Thus, Defendant's motion for summary judgment as to Plaintiffs'
2  Fifth Cause of Action is denied.

3      **IV.    CONCLUSION**

4      For the foregoing reasons the Court hereby GRANTS Defendant's motion for summary
5  judgment as to Plaintiffs' Bag Search Claim (Plaintiffs' Seventh Cause of Action) and DENIES
6  Defendant's motion for summary judgment as to Plaintiffs' Wage Statement Claim (Plaintiffs'
7  Fifth Cause of Action).  Furthermore, the Court finds that Plaintiffs have not met their burden of
8  showing that PVH and Retail Stores meet the "integrated enterprise" test required to pierce the
9  corporate veil between the two companies.  Thus, because Retail Stores is not named as a
10 defendant in this lawsuit, the Subclasses of this lawsuit must be restricted to nonexempt
11 employees of PVH.

13      IT IS SO ORDERED.
14 Dated: July 21, 2016

Troy L. Nunley
United States District Judge