1  Ronald H. Bae (SBN 186826)
   rbae@AequitasLegalGroup.com
2  Olivia D. Scharrer (SBN 291470)
   oscharrer@AequitasLegalGroup.com
3  AEQUITAS LEGAL GROUP
   A Professional Law Corporation
4  1156 E. Green Street, Suite 200
   Pasadena, California 91106
5  Telephone:     (213) 674-6080
   Facsimile:     (213) 674-6081
6

7  Attorneys for Plaintiffs JODI SCOTT-GEORGE,
   and MELISSA WIGGS and the Certified Class
8

9

10              **UNITED STATES DISTRICT COURT**

11     **EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION**

12  JODI SCOTT-GEORGE, individually, and on      **Case Number:   2:13-cv-00441-TLN-AC**
    behalf of other members of the general public
13  similarly situated,                          [The Honorable Troy L. Nunley]

14
                                                 **NOTICE OF UNOPPOSED MOTION AND**
15              Plaintiff,                        **UNOPPOSED MOTION FOR**
                                                 **PRELIMINARY APPROVAL OF CLASS**
16         vs.                                    **ACTION SETTLEMENT**

17
18  PVH CORPORATION, a Delaware                   **Hearing Date:    November 3, 2016**
    corporation, and DOES 1 through 100,          **Time:            2:00 p.m.**
19  inclusive,                                    **Location:        Courtroom 2**

20
21              Defendants.                       [Filed concurrently with the Declaration of
                                                 Ronald H. Bae; Declaration of Jodi Scott-
22                                               George; Declaration of Melissa Wiggs; and
                                                 Proposed Order]
23

24
25                                               [Complaint filed:   January 29, 2013]

26

27

28

-1-

A E Q U I T A S   L E G A L   G R O U P
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  **TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF**

2  **RECORD:**

3  　　　**PLEASE TAKE NOTICE THAT** on <u>November 3, 2016</u> at <u>2:00 p.m.</u> in <u>Courtroom 2</u> of

4  the above-captioned court located at 501 I Street, Sacramento, California 95814, Plaintiffs JODI

5  SCOTT-GEORGE, MELISSA WIGGS and the Certified Class will, and hereby do, move for an

6  order:

7  　　　1.　　　Granting preliminary approval of the proposed class action settlement;

8  　　　2.　　　Certifying the Settlement Class;

9  　　　3.　　　Appointing the Class Representatives;

10 　　　4.　　　Appointing the Class Counsel;

11 　　　5.　　　Appointing the Claims Administrator;

12 　　　6.　　　Approving the form of notice to the Class;

13 　　　7.　　　Setting the hearing date for Motion for Final Approval.

14 　　　This motion is made on the ground that the settlement is fair, reasonable, and adequate

15 because it is the product of arm's-length, good-faith negotiations after significant litigation, and

16 given the relative strengths and weaknesses of the claims and defenses, as well as the risks

17 involved in pursuing further litigation, the settlement should be approved to resolve the pending

18 dispute.  This motion will be based upon this Notice, the accompanying Memorandum of Points

19 and Authorities, Declaration of Ronald H. Bae, Declarations of Plaintiff Jodi Scott-George and

20 Plaintiff Melissa Wiggs, as well as the pleadings and papers on file herein and upon any other

21 matters that may be presented to the Court at the hearing.

22

23 Dated:  September 30, 2016　　　　　　Respectfully Submitted,

24 　　　　　　　　　　　　　　　　　AEQUITAS LEGAL GROUP

25 　　　　　　　　　　　　　　　　　　/s/  *Ronald H. Bae*

26 　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　RONALD H. BAE

27 　　　　　　　　　　　　　　　　　　OLIVIA D. SCHARRER
　　　　　　　　　　　　　　　　Attorneys for Plaintiffs JODI SCOTT-GEORGE,

28 　　　　　　　　　　　　　　　　MELISSA WIGGS and the Certified Class

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .................... 2

    A.    The Parties and Plaintiffs' Allegations ........................................ 2

    B.    Discovery and Investigation ....................................................... 3

        1.    Pre-Filing Investigation ................................................. 3

        2.    Written Discovery ......................................................... 4

        3.    Depositions ................................................................... 6

        4.    Class Member Discovery ............................................... 7

        5.    Third Party Discovery ................................................... 7

        6.    Other Discovery and Investigation ................................. 8

        7.    Settlement Negotiation .................................................. 98

III.    SUMMMARY OF SETTLEMENT TERMS ............................................ 10

    A.    The Settlement Amount ............................................................ 10

    B.    Eligible Employees .................................................................. 10

    C.    The Release .............................................................................. 10

    D.    Allocation Formula .................................................................. 11

    E.    Class Counsel's Fees and Litigation Costs ............................... 11

    F.    Class Representatives Enhancement Awards .............................. 11

    G.    Claims Administrator ............................................................... 12

IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

    AND THUS WARRANTS PRELIMINARY APPROVAL ............................ 12

    A.    The Risk, Expense and Likely Duration of Further Litigation Favors

        Preliminary Approval ............................................................... 12

    B.    The Proposed Settlement is the Product of Adversarial, Informed, Arm's

        Length Negotiations Conducted by Experienced Counsel with the

        Assistance of an Experienced Mediator .................................... 14

    C.    The Stage of the Proceedings and the Extent of Discovery Completed ................. 14

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

2:13-CV-00441-TLN-DB

\\LA - 039936/000005 - 1371944 v2

Support Preliminary Approval ............................................... 14

D.   The Strength of Plaintiffs' Case and the Amount Offered in Settlement............... 15

V.   CONDITIONAL CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT

PURPOSES IS APPROPRIATE....................................................... 16

A.   Numerosity ................................................................ 16

B.   Commonality ............................................................... 16

C.   Typicality ................................................................ 17

D.   Adequacy of Class Representatives ......................................... 18

E.   Certification Is Proper Under Rule 23(b)(3) ............................... 18

1.   Common Questions Predominate................................... 18

2.   Class Action Is a Superior Mechanism .......................... 19

VI.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ........... 19

VII.   THE PROPOSED NOTICE TO CLASS AND THE CLAIMS PROCESS ...................... 20

SATISFY DUE PROCESS ........................................................... 20

VIII.   PROPOSED IMPLEMENTATION SCHEDULE................................. 22

IX.   CONCLUSION .............................................................. 23

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1

## **TABLE OF AUTHORITIES**

2

### Cases

3    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 19

4    *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 776 (1987) ................................. 14

5    *Brown v. Cameron-Brown*, 92 F.R.D. 32 (E.D. Va. 1981) .............................................. 19

6    *Californians for Disability Rights v. Dept. of Transportation*, 249 F.R.D. 334 (N.D. Cal. 2008) . 16

7    *Churchill Village, LLC v. General Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ....................... 20

8    *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)............................. 16

9    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................... 20

10    *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ........................... 17

11    *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................ 13

12    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988).................................... 12, 16, 18

13    *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..................................... 17

14    *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................... 12

15    *Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982)............................... 16

16    *Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014)...................... 13

17    *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..................... 12

18    *Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989) ...................................................... 13

19    *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (2005) ....................................... 17

20    *Staton v. Boeing, Co.*, 327 F.3d 938 (9th Cir. 2003)................................................... 17

21    *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011)....................... 13

22    *Vinole v.Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ........................ 18

23

### Rules

24    FED. R. CIV. P. 23(a)......................................................................................... 16, 18

25    FED. R. CIV. P. 23(b)........................................................................................ 16, 18, 19

26    FED. R. CIV. P. 23(c)........................................................................................... 20

27    FED. R. CIV. P. 23(g)........................................................................................... 20

28

**NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**2:13-CV-00441-TLN-DB**

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1

<u>Other Authorities</u>

2   Conte & Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2006) .......................................... 12

3   Conte & Newberg, Newberg on Class Actions, § 3:12 (5th ed. 2013) .......................................... 16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

2:13-CV-00441-TLN-DB

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Plaintiffs Jodi Scott-George and Melissa Wiggs and Defendants PVH Corp. and PVH Retails Stores LLC (hereinafter the "parties") have agreed to settle this wage and hour class action case and hereby seek this Court's preliminary approval of the proposed settlement.  This proposed settlement is presented to this Court after almost four years of litigation consisting of: pre-filing investigation, extensive discovery, review and analysis of approximately 15,000 pages of documents as well as spreadsheets, retention of experts for data analysis, depositions of Plaintiffs and Defendant's 30(b)(6) designees, interviews of approximately 200 putative class members, motion practice consisting of Plaintiffs' motion for class certification and Defendant's motion for partial summary judgment, exchange of relevant data and documents between the parties for mediation, two full days of mediation sessions, and lengthy post-mediation discussions and negotiations.

The proposed settlement - which provides a maximum settlement amount of $3,250,000 to approximately 13,267 class members – is an excellent result for the Class considering that the Court recently granted Defendant's motion for partial summary judgment as to the Plaintiffs' security bag check claim and also found that PVH Retail Stores LLC and PVH Corp. were not an integrated enterprise.  This proposed settlement satisfies all of the criteria for preliminary settlement approval as its terms are fair, reasonable and adequate for the following reasons.  First, the risk, expense and likely duration of further litigation favors preliminary approval.  Although the case was certified, the likelihood of prevailing on liability and damages, not to mention the chance of prevailing an appeal of the grant of Defendant's motion for partial summary judgment discussed above is fraught with significant risks.  Second, the proposed settlement is the result of arm's-length negotiations between competent counsel well-versed in class action jurisprudence.  Further, the case was extensively mediated by a third-party neutral highly experienced in wage and hour class actions.  Third, the parties have completed extensive discovery and thereafter even engaged in summary adjudication of certain causes of action and issues.  Thus, the stage of this litigation has progressed sufficiently to allow the parties to make an informed decision as to what

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  would constitute a fair, reasonable and adequate settlement.  Lastly, the strength of Plaintiffs' case

2  warrants preliminary approval because Plaintiffs would not only have to first establish liability and

3  prove damages on the remaining claims at trial, but also thereafter have to win an appeal to revive

4  the security bag check claim and to be able to expand the class to include the employees of PVH

5  Retail Stores LLC.

6         Accordingly, Plaintiffs respectfully request this Court to grant preliminary approval of the

7  proposed settlement, certify the Settlement Class, appoint Plaintiffs as the Class Representatives,

8  appoint Plaintiffs' counsel as Class Counsel, appoint the Rust Consulting as the Claims

9  Administrator, approve the form of notice to the Class, and set the hearing date for Motion for

10 Final Approval.

11 **II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

12      **A.      The Parties and Plaintiff's Allegations**

13        Defendant PVH Corp. ("Defendant" or "PVH") is a publicly-traded international clothing

14 company that, among other things, currently operates Van Heusen and Izod retail stores and

15 previously operated G.H. Bass retail stores during the time period relevant to this case.  Defendant's

16 wholly owned subsidiary, PVH Retail Stores LLC ("PVH Retail") currently operates Calvin Klein

17 and Tommy Hilfiger retail stores.  PVH Retail was not formally named as a defendant, but has been

18 involved in this case as described below and will be added as a defendant in the Fourth Amended

19 Complaint.  The parties have stipulated that Plaintiffs will file a Fourth Amended Complaint in

20 connection with this settlement, and have filed a stipulation regarding the filing of the Fourth

21 Amended Complaint for the Court's review and approval.  (Dkt. 137)  Declaration of Ronald H.

22 Bae (hereinafter "Bae Decl.") ¶ 2.

23        Plaintiff JODI SCOTT-GEORGE ("Plaintiff Scott-George") is a former non-exempt,

24 hourly employee of PVH.  Scott-George worked as a Sales Associate and Assistant Manager at the

25 G.H. Bass store in Truckee, California from July 31, 2009 to August 26, 2010.  Bae Decl. ¶ 3.

26 Plaintiff MELISSA WIGGS ("Plaintiff Wiggs") is a former non-exempt, hourly paid employee of

27 PVH.  Wiggs worked as a Floor Supervisor at the Van Heusen store in Mammoth Lakes,

28 California from August 16, 2012 to May 26, 2013.  Bae Decl. ¶ 4.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

In the Fourth Amended Complaint, Plaintiffs and the certified class allege that Defendant: (1) failed to pay all regular and overtime wages; (2) failed to provide legally compliant meal and rest breaks; (3) failed to pay waiting time penalties; (4) failed to provide legally compliant wage statements; (5) failed to pay all vacation wages due; and (6) violated California Business & Professions Code §§ 17200, *et seq*. With regard to the claim for unpaid regular and overtime wages, Plaintiffs alleged that Defendant violated both California Labor Code and Fair Labor Standards Act by failing to pay overtime and double time wages at the correct rates, did not pay employees for time spent undergoing security bag checks, and did not pay employees all wages owed because employees were charged fees to access their pay from Money Network pay cards. With regard to meal and rest periods, Plaintiffs alleged that Defendant's policies were defective and failed to provide compliant meal and rest breaks. Plaintiffs also alleged that managerial employees were denied compliant meal and rest periods because Defendant required at least one managerial employee to be on duty at all times. With regard to Defendant's failure to pay all wages due at the time of termination, Plaintiffs alleged that waiting time penalties were owed due to Defendant's willful failure to pay regular and overtime wages for reasons discussed above. With regard to wage statements, Plaintiffs alleged that employees were given non-compliant wage statements. With regard to vacation wages, Plaintiffs alleged that Defendant's vacation policy was a defective lose-it-or-use-it policy and not all vacation wages were paid at the time of termination. Finally, Plaintiffs alleged that all of the above conduct violated California Business & Professions Code §§ 17200, *et seq*. Bae Decl. ¶ 5.

**B.      Discovery and Investigation**

Over the course of about four years, Plaintiffs' counsel expended extensive time and resources conducting investigation and discovery regarding the class claims, as follows:

**1.      Pre-Filing Investigation**

Prior to filing the complaint, Plaintiffs' counsel requested Plaintiff Scott-George's employment records from Defendant pursuant to California Labor Code §§ 226(b), 432 and 1198.5. Plaintiffs' counsel received and reviewed Plaintiff Scott-George's personnel file, wage statements, time records, and other documents. Bae Decl. ¶ 31. Plaintiffs' counsel obtained

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  copies of the employment records that Plaintiff Scott-George had in her possession, which

2  included wage statements, portions of Scott-George's personnel file, and a copy of PVH's

3  Associate Handbook.  Bae Decl. ¶ 32.  Plaintiffs' counsel also made a Public Records Act request

4  to the Division of Labor Standards Enforcement, seeking documents relating to wage-and-hour

5  claims against PVH Corp.  Plaintiffs' counsel received three sets of documents in response to this

6  request.  Bae Decl. ¶ 33.  Plaintiffs' counsel reviewed and analyzed all of these documents prior to

7  filing the complaint.  Bae Decl. ¶ 34.

8                    **2.       Written Discovery**

9           Pre-certification discovery began on May 17, 2013, when the parties exchanged initial

10  disclosures.  Plaintiff Scott-George's initial disclosures included 242 pages of relevant and

11  potentially relevant documents.  Bae Decl. ¶ 35.  On May 10, 2013, Plaintiff Scott-George served

12  Interrogatories (Set 1), seeking the names and contact information of the putative class members.

13  A Belaire-West notice was mailed to the putative class members in August 2013, and Defendant

14  produced the class list on October 29, 2013.  Bae Decl. ¶ 36.  On May 31, 2013, Plaintiff Scott-

15  George served Requests for Production of Documents (Sets 1 to 3), seeking documents relating to

16  the affirmative defenses alleged in Defendant's answer to the complaint, Plaintiff Scott-George's

17  employment records, and policy documents relating to the claims in this case.  Defendant provided

18  substantive responses to each set of requests and produced about 400 pages of responsive

19  documents.  Bae Decl. ¶ 37.

20          On August 8, 2013, Plaintiff Scott-George served Requests for Production of Documents

21  (Sets 4 to 6), seeking class members' time and payroll records and communications between

22  Defendant and class members and class members' managers and supervisors regarding the wage-

23  and-hour policies and practices at issue in this case.  Defendant provided substantive responses to

24  each set of requests and produced about 13,300 pages of responsive documents.  Bae Decl. ¶ 38.

25  On August 28, 2013, former Plaintiff Sperlin served his Requests for Production of Documents,

26  seeking his employment records and policy documents and communications related to Money

27  Network pay cards.  Defendant provided substantive responses to these requests and produced

28  about 90 pages of responsive documents.  Bae Decl. ¶ 39.

On December 23, 2013, Plaintiff Wiggs served her Requests for Production of Documents (Set 1), seeking additional documents related to the pay card claim.  Defendant provided substantive responses and amended responses and produced about 350 pages of responsive documents.  Bae Decl. ¶ 40.  On January 2, 2014, Plaintiff Wiggs served her Requests for Production of Documents (Set 2), seeking policy documents, communications, and other relevant documents relating to the security bag check claim.  Plaintiff Wiggs also served Requests for Admission (Set 1), seeking admissions relating to the security bag check and wage statement claims.  Defendant provided substantive responses to both sets of requests and produced about 35 pages of responsive documents.  The responses to the Requests for Admission consisted mainly of denials.  Bae Decl. ¶ 41.

On October 13, 2014, Plaintiff Scott-George served her Requests for Admission (Set 1) relating to the claims for unpaid overtime and double time.  Defendant provided substantive responses.  Bae Decl. ¶ 42.

Also on October 13, 2014, Plaintiff Wiggs served her Requests for Production of Documents (Set 3), seeking surveillance footage that might show class members undergoing security bag checks.  Defendant provided responses indicating that no such video footage was in Defendant's possession, custody, or control.  Bae Decl. ¶ 43.

Post-certification discovery began on May 16, 2016.  On that date, Plaintiff Scott-George served Interrogatories (Set 2), seeking facts and identification of documents relating to certain of Defendant's key contentions regarding the claims in this case.  On June 30, 2016, Defendant provided substantive responses to these interrogatories.  Bae Decl. ¶ 44.

On June 14, 2016, Plaintiffs Scott-George and Wiggs served Requests for Production (Sets 1 and 2), seeking documents relating to the affirmative defenses alleged in Defendant's answer to the Third Amended Complaint and updated time and payroll records for the class members.  On July 14, 2016, Defendant provided substantive responses to these requests.  With regard to Requests for Production of Documents (Set 1), Defendant identified previously produced documents but did not produce any additional documents. With regard to Requests for Production (Set 2), Defendant offered to make responsive documents available for inspection at each store

**A E Q U I T A S   L E G A L   G R O U P**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

where the documents were kept.  Plaintiffs were preparing to meet and confer regarding Defendant's responses to these two sets of document requests at the time the case settled.  Bae Decl. ¶ 45.

In addition to conducting the discovery described above, Plaintiffs responded to numerous discovery requests from Defendant.  Bae Decl. ¶ 46.  On May 14, 2013, Defendant served a notice of Plaintiff-George's deposition that included Defendant's Requests for Production of Documents (Set 1) to Plaintiff Scott-George.  On July 5, 2013, Plaintiff Scott-George provided substantive responses, including 48 pages of documents.  On July 19, 2013, Plaintiff Scott-George provided amended responses with an additional 69 pages of documents.  Bae Decl. ¶ 47.

On October 3, 2013, Defendant served Requests for Admission (Set 1) and Interrogatories (Set 1) on Plaintiff Scott-George, seeking admissions and supporting facts relating to the pay card and wage statement claims.  Plaintiff Scott-George provided substantive responses to these requests on November 7, 2013 and December 2, 2013.  Bae Decl. ¶ 48.

On November 15, 2013, Defendant served Requests for Production of Documents (Set 1) on Plaintiff Wiggs.  These requests primarily sought documents relating to the security bag check and wage statement claims and Plaintiff Wiggs' employment with Defendant.  On December 19, 2013, Plaintiff Wiggs provided substantive responses to these requests, including 73 pages of documents.  Bae Decl. ¶ 49.

On December 10, 2013, Defendant served Special Interrogatories (Set 1) on Plaintiff Wiggs, seeking information relating to Plaintiff Wiggs' contentions regarding the security bag check, pay card, and wage statement claims.  On January 13, 2014, Plaintiff Wiggs provided substantive responses to these interrogatories.  Bae Decl. ¶ 50.

On January 6, 2014, Defendant served Requests for Admission (Set 2) and Interrogatories (Set 2) on Plaintiff Scott-George, seeking admissions and supporting facts relating to the claims for unpaid wages (including vacation wages) and the wage statement claim.  On February 20, 2014, Plaintiff Scott-George provided substantive responses.  Bae Decl. ¶ 51.

### 3.      Depositions

On November 13, 2014, Plaintiffs took the depositions of two of Defendant's 30(b)(6)

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  witnesses regarding topics relating to the class certification analysis.  Plaintiffs took the deposition

2  of Karen Buckley, Defendant's vice president of payroll, regarding Defendant's corporate and

3  business structure; class members' payroll records; and Defendant's policies and practices relating

4  to payroll, overtime and double time pay, and Money Network pay cards.  Plaintiffs also took the

5  deposition of Carla David, Defendant's vice president of retail human resources, regarding class

6  members job duties, time records, and work schedules; Defendant's timekeeping policies and

7  practices; Defendant's employee handbook; Defendant's policies and practices relating to security

8  bag checks, shrinkage, meal and rest breaks, vacation, staffing of retail stores, and training of class

9  members on wage-and-hour topics.  Bae Decl. ¶ 52.  Also, Defendant took the deposition of

10  Plaintiff Scott-George on July 14, 2013.  Defendant took the deposition of Plaintiff Wiggs on

11  January 10, 2014.  Bae Decl. ¶ 53.

12              **4.      Class Member Discovery**

13          Shortly after receiving the class list on October 29, 2013, Plaintiffs mailed a pre-

14  certification notice to the class members to provide information about the claims in this case and

15  invite class members to contact Plaintiffs' counsel to discuss how these claims applied to them.

16  Many class members responded to this notice and provided information regarding their work

17  experience at PVH.  Bae Decl. ¶ 54.  In total, Plaintiffs interviewed approximately 200 class

18  members, who provided information regarding the claims in this case and in some cases provided

19  signed declarations.  Bae Decl. ¶ 55.  Plaintiffs also obtained written authorizations for release of

20  records from 183 class members.  Plaintiffs requested these class members' time records, pay

21  records, and other employment records from Defendant pursuant to California Labor Code §§

22  226(b), 432 and 1198.5.  Bae Decl. ¶ 56.

23              **5.      Third Party Discovery**

24          On November 4, 2013, Plaintiffs issued a subpoena to First Data Corporation seeking

25  documents and data related to the pay card claim.  First Data Corporation is a company that

26  provided services to Defendant related to the Money Network pay cards and maintained data

27  relating to class members' use of the pay cards.  In January, February, and March 2014, First Data

28  Corporation produced documents responsive to Plaintiffs' subpoena.  Bae Decl. ¶ 57.

On May 27, 2016, Plaintiffs issued a subpoena to Jack L. Hayes International, seeking documents related to the security bag check claim. Jack L. Hayes International is a company that provided consulting services to Defendant related to loss prevention and shrinkage improvement. Plaintiffs met and conferred extensively with counsel for Jack L. Hayes International, who maintained that there were few if any responsive documents. In July 2016, Jack L. Hayes International produced a sampling of responsive documents. Bae Decl. ¶ 58.

### 6.   Other Discovery and Investigation

In addition to the information and documents described above, Defendant also produced a sampling of class members' time and payroll records on an informal basis for mediation. Between May and July 2014, Defendant produced a random sampling of class members' time records and corresponding payroll records in PDF format. The time and payroll records pertained to 1,896 weekly pay periods between January 2009 and December 2013. These records were from 20 G.H. Bass stores, 24 Calvin Klein stores, 13 Izod stores, 21 Tommy Hilfiger stores, and 20 Van Heusen stores in California. Defendant also produced Excel spreadsheets containing additional payroll data for G.H. Bass, Calvin Klein, Izod, Tommy Hilfiger, and Van Heusen stores between January 2009 and May 2014. Finally, Defendant produced a sampling of other records pertaining to the different brands at issue, including work schedules, sales plans and coverage plans (which contained information relating to sales goals and staffing), and class members' vacation pay. The mediation sampling covered all 5 of the PVH Corp. and PVH Retail brands at issue in this case (G.H. Bass, Calvin Klein, Izod, Tommy Hilfiger, and Van Heusen). Bae Decl. ¶ 59.

Plaintiffs retained an economic damages expert to analyze a sampling of the documents Defendant produced for mediation and assist in preparing a damages model. Plaintiffs also requested this expert to conduct a detailed analysis of Plaintiff Scott-George's time and payroll records to calculate the amount of overtime and double time wages owed to Plaintiff Scott-George. Plaintiffs' expert concluded that Plaintiff Scott-George was owed overtime and double time pay for a number of workweeks. Bae Decl. ¶ 60.

After Plaintiffs' motion for class certification was granted, Plaintiffs were in the process of consulting with a number of experts, for purposes of retention for trial to help create a plan to

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  develop a method of proving liability and damages for the certified class.  Bae Decl. ¶ 61.

2       **7.**  **Settlement Negotiation**

3     All of Plaintiffs' Counsel's pre-filing investigation, discovery during litigation and

4  settlement discussions at two different mediation sessions followed by countless follow-up

5  discussions with the mediator resulted in the ability to estimate Defendant's exposure, as well as

6  the success probabilities applicable to certification and liability for each cause of action.  In

7  addition, the parties have litigated various key issues before this Court, including Plaintiff's

8  motion for class certification and Defendant's motion for partial summary judgment.  Plaintiffs

9  were thus able to enter the final phase of the settlement negotiations after having thoroughly

10  assessed the risks concerning their ability to maintain class certification and chances of prevailing

11  on liability and providing damages.  Consequently, Plaintiffs were armed with the necessary

12  information to determine what is a fair and reasonable settlement amount.  Bae Decl. ¶ 76.

13     On July 10, 2014, the parties participated in a mediation with Mr. David Rotman, a well-

14  respected mediator who is very knowledgeable and experienced in wage and hour class actions.

15  Despite exhaustive discussions of issues relating to certification and merits throughout the day, the

16  parties were unable to reach a settlement.  Nevertheless, with the help of the mediator, the parties

17  scheduled a second session of mediation on September 9, 2014.  Unfortunately, however, the

18  second mediation session did not result in a settlement.  After the failed settlement talks, the

19  parties engaged in heavy litigation, as discussed above, concerning the scope of release in the

20  related *Chavez* and *Lapan* cases, Plaintiffs' motion for class certification, and Defendant's motion

21  for partial summary judgment and numerous other related issues.  This extensive litigation

22  continued for approximately two years.   Bae Decl. ¶ 77.

23     In or around June 2016, the parties reinitiated settlement talks through the mediator, and

24  after approximately two months of negotiation, the parties were still far apart.  It was only after the

25  mediator made a mediator's proposal that parties finally reached to a tentative settlement for a

26  maximum settlement amount of $3,250,000.  After spending weeks in finalizing the principal

27  terms of the settlement to be memorialized in the Memorandum of Understanding, the parties had

28  to further negotiate the terms of the comprehensive Joint Stipulation of Class Action Settlement as

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  well as the language of the notice to be sent to the class members and the language of the claim

2  form and opt-out form.  The parties encountered numerous difficulties in reaching an agreement,

3  not only as to the terms of the settlement but also the language to be used in the notice packet.

4  Nevertheless, the parties diligently worked together as best as they could to finalize the settlement

5  terms and the language of the notice packet, which were then memorialized in the Joint Stipulation

6  of Settlement of Class Action.  A true and correct copy of the fully executed Joint Stipulation of

7  Settlement of Class Action (and the proposed notice packet) is attached as **Exhibit A** to Bae Decl.

8  Bae Decl. ¶ 78.

9  **III.    SUMMMARY OF SETTLEMENT TERMS**

10         **A.    The Settlement Amount**

11         The Joint Stipulation of Class Action Settlement provides that Defendants will pay a total

12  and all-inclusive, maximum gross settlement amount of Three Million Two Hundred Fifty

13  Thousand Dollars ($3,250,000) to settle all claims against Defendants.  **Ex. A** to Bae Decl.; Joint

14  Stip. ¶ 12.a.  The maximum gross settlement amount covers payments to class members, the class

15  representative enhancement awards, the settlement administrator's fees and costs, payment to the

16  Labor Workforce Development Agency for PAGA penalties, and Class Counsel's attorneys' fees

17  and costs.  The employer's portion of government-mandated withholdings on the wage portion of

18  settlement payments to class members shall not be included in, but will be paid in addition to

19  maximum gross settlement amount by Defendants.  This is a non-reversionary settlement.  The

20  Parties agree that no part of the maximum gross settlement amount will revert back to Defendants.

21  Joint Stip. ¶ 12.a.

22         **B.    Eligible Employees**

23         The settlement class consists of all current and former non-exempt employees who were

24  employed in California by PVH Corp. or PVH Retail Stores LLC during the class period.  The

25  class period runs from January 29, 2009 (four years prior to the filing of the original complaint)

26  through the date of preliminary approval of this settlement.  Joint Stip. ¶ 2.a.

27         **C.    The Release**

28         The Joint Stipulation provides that upon final approval of the settlement, the class

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  representatives and each class member who have not opted out of this settlement in a timely

2  manner, shall release and discharge PVH Corp. and PVH Retail Stores LLC from any and all

3  wage and hour claims that were alleged or that could have been alleged in the lawsuit, that were

4  based on the factual allegations in the four complaints filed in this action, or that otherwise predate

5  the date of preliminary approval of this settlement.  Joint Stip. ¶ 17.a.  This waiver shall include

6  both known and unknown wage claims.  *Id.*

7      **D.      Allocation Formula**

8          Class members will be paid pursuant to an allocation formula based on the number of

9  workweeks for which they worked and received a paycheck during the class period.  Each Class

10 member's individual settlement payment will be based on a ratio of the class member's individual

11 workweeks to the total workweeks.  The individual settlement payment will be calculated by

12 dividing the total workweeks for the class into the net settlement amount to determine the weekly

13 payment amount, and then multiplying the weekly payment amount by each class member's total

14 workweeks.  Joint Stip. ¶ 12.b.ii.

15      **E.      Class Counsel's Fees and Litigation Costs**

16         Plaintiffs' counsel will apply for thirty percent of the Maximum Settlement Amount as

17 attorneys' fees.  Additionally, Plaintiffs' counsel will seek reimbursement for their actual

18 litigation costs and expenses from the Maximum Settlement Amount, not to exceed $75,000.  The

19 Court need not decide the attorneys' fees and costs issue now.  Pursuant to Federal Rule of Civil

20 Procedure 23(h) and 54(d)(2), Plaintiffs' counsel will file a Motion for Award of Class

21 Representative Incentive Awards, Claims Administrator's Expenses and Attorneys' Fees and

22 Costs to be heard at the time of the hearing for the Motion for Final Approval of the Class Action

23 Settlement.

24      **F.      Class Representatives Enhancement Awards**

25         In addition to their pro rata share of the settlement funds, Plaintiffs will apply for class

26 representatives enhancement awards in recognition of their services they rendered on behalf of the

27 class.  Plaintiffs will move for Court approval of such award in the amount of $10,000 for each

28

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1    current class representative in conjunction with their request for final approval of the proposed

2    class action settlement.

3         **G.**     **Claims Administrator**

4         The parties agreed to use Rust Consulting as the claims administrator.  Joint Stip. ¶ 12.a.ii.

5    Rust Consulting is an experienced and well-known class action settlement administrator that

6    counsel have worked with in numerous other class action settlements, including the recent and

7    successful settlement administration of the two related cases.  The claims administrator's fees will

8    be paid from the maximum gross settlement amount, and are estimated not to exceed $55,000.  *Id*.

9    at ¶ 12.a.iii.

10   **IV.**     **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

11           **AND THUS WARRANTS PRELIMINARY APPROVAL**

12        In evaluating proposed class action settlements, the Ninth Circuit teaches that as a matter

13   of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing

14   should "not be turned into a trial or rehearsal for trial on the merits."  *Officers for Justice v. Civil*

15   *Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Furthermore, courts must give "proper

16   deference" to settlement agreements because "the court's intrusion upon what is otherwise a

17   private consensual agreement negotiated between the parties to a lawsuit must be limited to the

18   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

19   overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a

20   whole, is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d

21   1011, 1027 (9th Cir. 1988), citing *Officers for Justice v. Civil Serv. Comm'n*.  At the preliminary

22   approval stage, district courts need only determine that the settlement is non-collusive and within

23   the range of possible final approval.  *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079-

24   80 (N.D. Cal. 2007); *see also* Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions, §

25   11.41 (4th ed. 2006).

26        **A.**     **The Risk, Expense and Likely Duration of Further Litigation Favors**

27           **Preliminary Approval**

28        When the claims at issue are heavily contested, there is an inherent risk in continuing

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   litigation.  In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011), the

2   district court approved a settlement agreement in which the defendant specifically denied liability,

3   noting that such denial of liability posed a risk to continued litigation.  *See also Mora v. Harley-*

4   *Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to

5   settlement agreement where defendant denied any liability).  Further, the court acknowledged that

6   "even with a strong case, litigation entails expense."  *See Greko v. Diesel U.S.A., Inc.*, 2013 WL

7   1789602 at *4 (N.D. Cal. Apr. 26, 2013).

8       In the instant case, Defendants vehemently denied liability.  Indeed, Defendants vigorously

9   litigated the case at many different levels.  Defendants strenuously opposed Plaintiffs' attempt to

10  obtain certification and filed a robust opposition.  Bae Decl. ¶¶ 11 - 12.  Even after the case was

11  certified, Defendants did not relent and filed a motion for partial summary judgment.  Bae Decl. ¶

12  13.  And as this Court is well aware, Defendants succeeded in getting its motion granted as to the

13  security bag check claim and limiting the class to the employees that worked for PVH Corp., not

14  PVH Retail Stores LLC.  *Id.*

15      In addition, Plaintiffs still had numerous roadblocks before achieving the desired result for

16  the Class.  Plaintiffs' next course of action was to prepare and take the case to trial on a classwide

17  basis.  Trying a class action case to verdict is of course fraught with uncertainties, particularly

18  involving the use of statistical sampling, not to mention the expense of identifying and

19  transporting fact witnesses to testify at trial.  Even assuming that a favorable trial verdict could be

20  obtained, that verdict would not include the security bag check claim which is arguably one of the

21  most valuable claims.  Moreover, the verdict would only be against the limited group of

22  employees that worked for PVH Corp. and not PVH Retail Stores LLC.  In contrast, this proposed

23  settlement includes all claims and all employees that worked for both entities.  The possibility that

24  Plaintiffs could have achieved a better result if the case was tried to verdict should be viewed with

25  the above risks in mind.  *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("The fact that

26  a plaintiff might have received more if the case had been fully litigated is no reason not to approve

27  the settlement.").

28  / / /

**A E Q U I T A S   L E G A L   G R O U P**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-13-

**B.** **The Proposed Settlement is the Product of Adversarial, Informed, Arm's Length Negotiations Conducted by Experienced Counsel with the Assistance of an Experienced Mediator**

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 776, 822 (1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair"). The proposed settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are well-versed with class action litigation and with the legal and factual issues of this case in particular. Settlement negotiations took place on multiple occasions during the course of this litigation. Two separate sessions of full-day mediation were held under the guidance of experienced class action mediator, David Rotman. Even after the second session, however, the parties were unable to settle the case. After the failed settlement talks, the parties engaged in heavy litigation for two full years, as discussed above, concerning the scope of release in the related *Chavez* and *Lapan* cases, Plaintiffs' motion for class certification, and Defendant's motion for partial summary judgment and numerous other related issues. In or around June 2016, the parties reinitiated settlement talks through the mediator, and after approximately two months of negotiation, the parties were still far apart. It was only after the mediator made a mediator's proposal that parties finally reached a settlement. Bae Decl. ¶¶ 77 – 78. Accordingly, preliminary approval of the proposed settlement is warranted, and the settlement should be presented to the Class Members for their consideration.

**C.** **The Stage of the Proceedings and the Extent of Discovery Completed Support Preliminary Approval**

This action has been vigorously litigated since the January 2013. As already discussed in Section II.B., *supra*, Plaintiffs promptly propounded extensive discovery requests and promptly exercised initiative to meet and confer, where necessary. Bae Decl. ¶¶ 36 - 45. Plaintiffs obtained the putative class list, and then proceeded to interview approximately two hundred putative class members, obtaining signed declarations which were filed in support of Plaintiff's motion for class certification. Bae Decl. ¶¶ 54 - 55. In addition, Plaintiffs also obtained written authorization

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   forms from 183 putative class members which authorized Plaintiffs' counsel to obtained their

2   payroll and personnel records to aid in the investigation and discovery in an effort to obtain class

3   certification.  Bae Decl. ¶ 56.  Moreover, Plaintiffs' counsel deposed Defendants' FRCP 30(b)(6)

4   corporate designees.  Bae Decl. ¶ 52.  As part of its investigation and discovery, Plaintiffs' counsel

5   reviewed and analyzed approximately 15,000 pages of documents produced by Defendants.  Bae

6   Decl. ¶¶ 35 - 41.  Defendants have taken depositions of both Plaintiffs.  Bae Decl. ¶ 53.  Plaintiffs

7   also conducted third party discovery regarding the paycard and security bag check claims.  Bae

8   Decl. ¶¶ 57 - 58.  In sum, the parties had engaged in extensive discovery leading up to the

9   mediation.  In addition to the discovery conducted, the parties had already battled over

10  certification and Defendants' motion for partial summary judgment.  These events indicate that the

11  stage of the proceeding of this case had sufficiently progressed to a point where the parties had

12  sufficient information to make an informed decision about whether to settle the matter.

13          **D.      The Strength of Plaintiffs' Case and the Amount Offered in Settlement**

14          Defendants have agreed to pay a maximum settlement amount of $3,250,000, a significant

15  amount when one considers that the security bag check claim was dismissed when this Court

16  granted Defendants' motion for partial summary judgment and the class was limited only to the

17  employees that worked for PVH Corp.  As discussed extensively in ¶¶ 63 – 74 of the Bae

18  Declaration, there were numerous viable defenses to each of the remaining causes of action.

19  Given the uncertainties and changing landscape in the current jurisprudence in the use of statistical

20  sampling, it is difficult to precisely extrapolate the total exposure, but based on Plaintiffs'

21  investigation as well as evidence provided by Defendants, taking into account appropriate

22  discounts, Defendants' total exposure for the remaining causes of action is estimated to be

23  approximately $7,586,333, assuming that Plaintiffs prevails at trial.  *See* Bae Decl. ¶¶ 62 - 75.

24  Thus, this $3,250,000 settlement represents a recovery of approximately 42.84% of total exposure,

25  which is an excellent result when considering the costs and risks attendant to Plaintiffs and the

26  Class.

27  / / /

28  / / /

**V.     CONDITIONAL CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE**

**A.     Numerosity**

Rule 23(a)(1) requires that "the class [be] numerous that joinder of all members is impracticable."  The parties agree that there are approximately 13,267 current and former employees who fall with the class definition.  Thus, the numerosity requirement is easily met. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983) (as few as 39 class members sufficient for numerosity); Conte & Newberg, Newberg on Class Actions (5th ed.), § 3:12 ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

**B.     Commonality**

The Ninth Circuit views the commonality preconditions under Rule 23(b)(3) as "less rigorous" than the companion requirements Rule 23(b)(3), and in fact, construes it "permissively" and deems the requirement "minimal."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998); *Californians for Disability Rights v. Dept. of Transportation*, 249 F.R.D. 334, 346 (N.D. Cal. 2008), citing *Dukes v. Wal-mart, Inc.*, 509 F.3d 1168, 1177 ("The existence of even one significant issue common to the class is sufficient to warrant certification.")

In this case, Plaintiffs believed the following common factual and legal questions were present:

- Does PVH's failure to pay regular and overtime wages violate California Labor Code §§ 510, 1194 and 1198 and Fair Labor Standards Act?

- Does PVH's policy of not compensating its employees for the time they undergo security bag checks violate California law and Fair Labor Standards Act?

- Does PVH's failure to provide a meaningful choice to receive earned wages in a form other than a paycard that charges fees (under some circumstances) violate California law?

- Does PVH's meal period policy violate IWC Wage Order 7-2001, § 11?

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

- Does PVH's rest period policy violate IWC Wage Order 7-2001, § 12?

- Does PVH's failure to include the beginning date of the pay period, total hours worked and applicable hourly rate on employee paystubs violate California Labor Code § 226?

- Does PVH's failure to pay timely all wages due at the time of termination violate California Labor Code §§ 201 - 203?

- Does PVH's vacation policy violate California Labor Code § 227.3?

The above questions hinge on the interpretation (and lawfulness thereof) of Defendants' policies and practices. As such, Plaintiffs contend that common factual and legal questions are present. Accordingly, commonality under Rule 23(a)(2) is met for settlement purposes.

## C.  Typicality

The Ninth Circuit explained that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003), citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). It is sufficient that the class representative is "part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). Put in another way, the test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In determining whether typicality is met, the "focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (2005).

Here, Plaintiffs allege that they were subjected to the same wage and hour policies as the other class members. Defendants' wage and hour policies at issue applied to all nonexempt employees, including Plaintiffs. As such, Plaintiffs and others have been allegedly injured by the same policies and practices and seek the same remedy. Thus, Plaintiffs' claims are typical of the entire class for settlement purposes.

/ / /

-17-

**NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**D.      Adequacy of Class Representatives**

Rule 23(a)(4) requires that the "representative parties [] fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  Adequacy of representation is established where the plaintiff's interests are not antagonistic to those of the class and the plaintiff is represented by competent counsel.  *See Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003).  Plaintiffs' interest in this litigation is co-extensive with the interests of the class.  Plaintiffs and the class members have been allegedly injured in the same manner by Defendants and seek the same relief. In addition, Plaintiffs have devoted considerable time to this litigation, including initiating the case by searching for a lawyer, consulting with their counsel to aid in the investigation, responding to written discovery, gathering documents responsive to discovery requests and subpoena, and Plaintiffs are prepared to continue to do so, demonstrating their commitment to achieving the best possible results for the class.  *See* Declarations of Jodi Scott-George and Melissa Wiggs. Accordingly, Plaintiffs are adequate class representatives for settlement purposes.

**E.      Certification Is Proper Under Rule 23(b)(3)**

**1.      Common Questions Predominate**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v Chrysler Corp*. 150 F.3d at 1022.  In other words, the predominance inquiry "focuses on 'the relationship between the common and individual issues.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).  Given that this Court has already found that the predominance requirement is met for all eight subclasses in its November 20, 2015 order granting class certification, Plaintiffs will not repeat the arguments

1  here.

2  **2.    Class Action Is a Superior Mechanism**

3  Rule 23(b)(3) "requires that class resolution must be 'superior to other available methods

4  for the fair and efficient adjudication of the controversy.'"  *Hanlon v. Chrysler Corp*. 150 F.3d at

5  1023.  "This determination necessarily involves a comparative evaluation of alternative

6  mechanisms of dispute resolution." *Id.*  Rule 23(b)(3) 's predominance and superiority

7  requirements were added "to cover cases 'in which a class action would achieve economies of

8  time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

9  without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*

10  *Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting FED. R. CIV. P. 23(b)(3), Adv. Comm.

11  Notes to 1966 Amendment).

12  In the instant case, the alternative methods of resolution would be individual claims of

13  some 13,267 employees, each of whom would seek only a relatively small amount in damages.

14  Assuming *arguendo* that each individual was able to find a lawyer who would accept such a small

15  individual claim, the flood of individual cases would unduly burden the judiciary.  On the other

16  hand, economies of time, effort, and expense, as well as uniformity of decision will be achieved if

17  this case is resolved through a class action settlement because it will bring finality to every class

18  member (except those who opt out), thereby disposing of most (if not all) future individual claims.

19  *See also Brown v. Cameron-Brown*, 92 F.R.D. 32, 49-50 (E.D. Va. 1981) ("The advantage of the

20  class action device has frequently been recognized in situations where it enables persons with

21  claims of small individual rights to pool their resources to wage a fight to vindicate their rights.")

22  In sum, a class action is the most suitable mechanism to fairly, adequately and efficiently resolve

23  this dispute.

24  **VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL**

25  Rule 23(g) governs the standards and framework for appointing class counsel for a

26  certified class and sets forth four criteria the district court must consider in evaluating the

27  adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating

28  potential claims in the action; (2) counsel's experience in handling class actions, other complex

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  FED. R. CIV. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  FED. R. CIV. P. 23(g), Advisory Committee's Note.

Plaintiffs' counsel meet all of these criteria.  Plaintiffs' counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  Bae Decl. ¶¶ 17 - 61.  In addition, Plaintiffs' counsel have significant experience prosecuting and settling wage and hour class actions, and the lawyers assigned to this matter are well-versed in wage and hour law and in class action law and are well-qualified to represent the interests of the class.  Bae Decl. ¶¶ 81 - 84.  Both state and federal courts have repeatedly found Plaintiffs' counsel to be adequate class counsel in wage and hour class actions.  Bae Decl. ¶ 84.  Indeed, this Court has already found that Plaintiffs' counsel will adequately represent the Class when the Court granted Plaintiffs' Motion for Class Certification on November 20, 2015.  Bae Decl. ¶ 12.  Accordingly, appointment of Plaintiffs' counsel as Class Counsel for settlement purposes is appropriate.

## VII.  THE PROPOSED NOTICE TO CLASS AND THE CLAIMS PROCESS SATISFY DUE PROCESS

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement."  FED. R. CIV. P. 23(e)(1)(B).  The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances."  FED. R. CIV. P. 23(c) (2)(B).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village, LLC v. General Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Notice mailed to each Class Member "who can be identified through reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule

23(b)(3), the notice must inform Class Members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." FED. R. CIV. P. 23(c)(2)(B).

In the instant case, the form and the manner of dissemination of the notice packet are consistent with modern best practices set forth by the Federal Judicial Center and negotiated and agreed upon by all counsel. The Notice will inform Class Members of the following, among other things:

1.  The nature of this action, the identity of Class Counsel, and the essential terms of the Settlement;

2.  The allocation of the Settlement fund, including the formula for calculation of settlement shares and the number of workweeks upon which each Class Member's individual share will be calculated, the requests for the Class Representative service payments and the Class Counsel attorneys' fees and costs payment, and the other payments that will be deducted from the Settlement fund;

3.  How to participate in the Settlement;

4.  How to opt out of the Settlement;

5.  How to object to the Settlement;

6.  This Court's procedures for final approval of the Settlement; and

7.  How to obtain additional information regarding this action and the Settlement.

**Ex. A** to Bae Decl. (Joint Stip., Ex. B).

The Notice is written in plain English and is organized and formatted so as to be as clear as possible. The Notice encourages Class Members to contact the Claims Administrator with any questions, and provides Class Counsel's and the Claims Administrator's telephone, mail, email, and website contact information. Thus, the notice standard is satisfied.

Plaintiffs' counsel and Defendants' counsel worked together to draft the proposed Notice so that it fairly and neutrally apprises the Class Members of their rights and remedies in this action. The parties' proposal to provide notice of the settlement to Class Members entails mailing the Class Notice and Claim Form to all known and reasonably ascertainable Class Members as follows.

Within seven (7) business days of preliminary approval of the settlement, Defendants shall

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   provide the Claims Administrator with a list of each Class Member's name, employee

2   identification number, last known home address, social security number, and the number of

3   workweeks during the Class Period for each such Class Member.  Joint Stip. ¶ 13.a.

4          Within ten (10) calendar days after the list of Class Members is provided to the Claims

5   Administrator, the Claims Administrator shall mail the Notice and Claim Form by first class

6   United States mail, postage prepaid, to the last known address or updated address of each Class

7   Member.  The envelope containing the Notice shall bear the following phrase, in bold type, ¼ inch

8   below the return address or ¼ inch above the addressee's address:  RETURN SERVICE

9   REQUESTED.  Joint Stip. ¶ 13.b.

10         If any Class Member's Notice is returned to the Claims Administrator as undeliverable

11   within the forty-five (45) day claims submission period, the Claims Administrator shall resend the

12   Notice within five (5) calendar days to the forwarding address, if any, on the returned envelope.

13   The Claims Administrator will resend a returned Notice to a forwarding address only one time per

14   Class Member, unless counsel for all Parties agree further mailings are necessary.  If there is no

15   forwarding address, the Claims Administrator must perform a skip trace search for a current

16   address using the Class Member's Social Security number; this search will be performed only

17   once per Class Member, unless counsel for all Parties agree further searches are necessary.  Joint

18   Stip. ¶ 13.c.

19         Thirty (30) calendar days after the Notice is mailed to the Class Members, the Claims

20   Administrator shall send by first-class mail a reminder postcard, approved by the Court, to the

21   Class Members who have not yet submitted a Claim Form or Request for Exclusion reminding

22   them of the submission deadline for Claim Forms and Requests for Exclusion.  Joint Stip. ¶ 13.d.

23         In sum, the proposed notice to the Class and the claims process satisfy due process and

24   thus should be approved for dissemination.

25   **VIII.   PROPOSED IMPLEMENTATION SCHEDULE**

26         Plaintiffs recommend the following implementation schedule following an Order granting

27   preliminary approval of the proposed class action settlement:

28   / / /

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

| | | |
|---|---|---|
| a. | Deadline for Defendants to Submit Class List and Data to Claims Administrator | **Seven (7) business days after the Order Granting Preliminary Approval** |
| b. | Deadline for Claims Administrator to Mail the Notice Packet to Class Members | **Ten (10) calendar days after Defendants provide the Claims Administrator with the Class List and Data** |
| c. | Deadline for Claims Administrator to Mail Reminder Post-Cards to Class Members | **Not more than thirty (30) calendar days (nor fewer than twenty-five (25) days) after mailing of Notice Packets to Class Members** |
| d. | Deadline for Class Members to Submit Claim Forms, Exclusion Forms, or Objections to Settlement | **Forty-five (45) calendar days after mailing of Notice Packets to Class Members** |
| e. | Deadline for Class Counsel to file (1) Motion for Final Approval of Class Action Settlement and (2) Motion for Award of Class Representative Enhancement Award, Claims Administrator's Expenses and Attorneys' Fees and Costs | **January 27, 2017** |
| f. | Hearing on:<br><br>• Motion for Final Approval of Class Action Settlement;<br><br>• Motion for Award of Class Representative Enhancement Award, Claims Administrator's Expenses and Attorneys' Fees and Costs | **February 23, 2017 (Thursday) at 2:00 p.m.** |

## IX.   CONCLUSION

The parties have successfully negotiated a settlement of claims that almost certainly would never have been brought, much less successfully so, but for the use of a class action as a procedural device.  The efficient and fair resolution of this case was made possible by the combined efforts of a dedicated and informed Class Representatives and experienced Plaintiffs' counsel and Defendants' counsel, who were able to realistically assess the costs and risks of

1  continued protracted litigation.  Accordingly, Plaintiffs respectfully request this Court to grant

2  preliminary approval of the proposed settlement, certify the Settlement Class, appoint Plaintiffs as

3  the Class Representatives, appoint Plaintiffs' counsel as Class Counsel, appoint the Claims

4  Administrator, approve the notice packet to the Class, and set the hearing date for the Motion for

5  Final Approval.

6

7  Dated:  September 30, 2016                    Respectfully Submitted,

8                                                AEQUITAS LEGAL GROUP

9                                                      /s/  *Ronald H. Bae*

10                                               By: _____
                                                      RONALD H. BAE
11                                                    OLIVIA D. SCHARRER
                                                 Attorneys for Plaintiffs JODI SCOTT-GEORGE,
12                                               MELISSA WIGGS and the Certified Class

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

**2:13-CV-00441-TLN-DB**